IN THE SUPREME COURT OF THE STATE OF DELAWARE

| | | |
|---|---|---|
| ROBERT A. CORWIN, MARGARET DEMAURO, ERIC GREENE, PIPEFITTERS LOCAL UNION NO. 120 PENSION FUND, and POMPANO BEACH POLICE & FIREFIGHTERS' RETIREMENT SYSTEM, | § § § § § § § § | |
| Plaintiffs Below-Appellants, | § § | No. 629, 2014 |
| v. | § § § | Court Below:  Court of Chancery of the State of Delaware, in and for New Castle County Consol. C.A. No. 9210-CB |
| KKR FINANCIAL HOLDINGS LLC, TRACY COLLINS, ROBERT L. EDWARDS, CRAIG J. FARR, VINCENT PAUL FINIGAN, JR., PAUL M. HAZEN, R. GLENN HUBBARD, ROSS J. KARI, ELY L. LICHT, DEBORAH H. MCANENY, SCOTT C. NUTTALL, SCOTT RYLES, WILLY STROTHOTTE, KKR & CO. L.P., KKR FUND HOLDINGS L.P., and COPAL MERGER SUB LLC, | § § § § § § § § § § § § | |
| Defendants Below-Appellees. | § § § | |

Submitted: September 16, 2015
Decided: October 2, 2015

Before **STRINE**, Chief Justice; **HOLLAND**, **VALIHURA**, **VAUGHN**, Justices; and **RENNIE**, Judge,[*] constituting the Court *en Banc*.

Upon appeal from the Court of Chancery.  **AFFIRMED**.

---

[*] Sitting by designation under Del. Const. art. IV, § 12.

Stuart M. Grant, Esquire (*Argued*), Mary S. Thomas, Esquire, Bernard C. Devieux, Esquire, Grant & Eisenhofer P.A., Wilmington, Delaware; Mark Lebovitch, Esquire, Jeroen van Kwawegen, Esquire, Adam Hollander, Esquire, Bernstein Litowitz Berger & Grossmann LLP, New York, New York, for Appellants.

Garrett B. Moritz, Esquire, Eric D. Selden, Esquire, Ross Aronstam & Moritz LLP, Wilmington, Delaware; Gregory P. Williams, Esquire, Richards Layton & Finger, P.A., Wilmington, Delaware; William Savitt (*Argued*), Esquire, Ryan A. McLeod, Esquire, Nicholas Walter, Esquire, Wachtell, Lipton, Rosen & Katz, New York, New York, for Appellees.

**STRINE**, Chief Justice:

In a well-reasoned opinion, the Court of Chancery held that the business judgment rule is invoked as the appropriate standard of review for a post-closing damages action when a merger that is not subject to the entire fairness standard of review has been approved by a fully informed, uncoerced majority of the disinterested stockholders.[1] For that and other reasons, the Court of Chancery dismissed the plaintiffs' complaint.[2] In this decision, we find that the Chancellor was correct in finding that the voluntary judgment of the disinterested stockholders to approve the merger invoked the business judgment rule standard of review and that the plaintiffs' complaint should be dismissed. For sound policy reasons, Delaware corporate law has long been reluctant to second-guess the judgment of a disinterested stockholder majority that determines that a transaction with a party other than a controlling stockholder is in their best interests.

## I. The Court Of Chancery Properly Held That The Complaint Did Not Plead Facts Supporting An Inference That KKR Was A Controlling Stockholder of Financial Holdings

The plaintiffs filed a challenge in the Court of Chancery to a stock-for-stock merger between KKR & Co. L.P. ("KKR") and KKR Financial Holdings LLC ("Financial Holdings") in which KKR acquired each share of Financial Holdings's stock for 0.51 of a share of KKR stock, a 35% premium to the unaffected market price. Below, the plaintiffs' primary argument was that the transaction was presumptively subject to the entire fairness standard of review because Financial Holdings's primary business was financing KKR's leveraged buyout activities, and instead of having employees manage

---

[1] *In re KKR Fin. Holdings LLC S'holder Litig.*, 101 A.3d 980, 1003 (Del. Ch. 2014).
[2] *Id.*

1

the company's day-to-day operations, Financial Holdings was managed by KKR Financial Advisors, an affiliate of KKR, under a contractual management agreement that could only be terminated by Financial Holdings if it paid a termination fee. As a result, the plaintiffs alleged that KKR was a controlling stockholder of Financial Holdings, which was an LLC, not a corporation.[3]

The defendants filed a motion to dismiss, taking issue with that argument. In a thoughtful and thorough decision, the Chancellor found that the defendants were correct that the plaintiffs' complaint did not plead facts supporting an inference that KKR was Financial Holdings's controlling stockholder.[4] Among other things, the Chancellor noted that KKR owned less than 1% of Financial Holdings's stock, had no right to appoint any directors, and had no contractual right to veto any board action.[5] Although the Chancellor acknowledged the unusual existential circumstances the plaintiffs cited, he noted that those were known at all relevant times by investors, and that Financial Holdings had real assets its independent board controlled and had the option of pursuing any path its directors chose.[6]

---

[3] We wish to make a point. We are keenly aware that this case involves a merger between a limited partnership and a limited liability company, albeit both ones whose ownership interests trade on public exchanges. But, it appears that both before the Chancellor, and now before us on appeal, the parties have acted as if this case was no different from one between two corporations whose internal affairs are governed by the Delaware General Corporation Law and related case law. We have respected the parties' approach to arguing this complex case, but felt obliged to note that we recognize that this case involved alternative entities, and that in cases involving those entities, distinctive arguments often arise due to the greater contractual flexibility given to those entities under our statutory law.

[4] *In re KKR Fin. Holdings*, 101 A.3d at 995.

[5] *Id.* at 994.

[6] *Id.* at 994–95.

In addressing whether KKR was a controlling stockholder, the Chancellor was focused on the reality that in cases where a party that did not have majority control of the entity's voting stock was found to be a controlling stockholder, the Court of Chancery, consistent with the instructions of this Court, looked for a combination of potent voting power[7] and management control such that the stockholder could be deemed to have effective control of the board without actually owning a majority of stock.[8] Not finding that combination here, the Chancellor noted:

> Plaintiffs' real grievance, as I see it, is that [Financial Holdings] was structured from its inception in a way that limited its value-maximizing options. According to plaintiffs, [Financial Holdings] serves as little more than a public vehicle for financing KKR-sponsored transactions and the terms of the Management Agreement make [Financial Holdings] unattractive as an acquisition target to anyone other than KKR because of [Financial Holdings]'s operational dependence on KKR and because of the significant cost that would be incurred to terminate the Management Agreement. I assume all that is true. But, every contractual obligation of a corporation constrains the corporation's freedom to operate to some degree and, in this particular case, the stockholders cannot claim to be surprised. Every stockholder of [Financial Holdings] knew about the limitations the Management Agreement imposed on [Financial Holdings]'s business when he, she or it acquired shares in [Financial Holdings]. They also knew that

---

[7] For example, the Chancellor noted the importance of examining whether an insurgent could win a proxy contest or whether the company could take action without the stockholder's consent. *Id.* at 991–95.

[8] *Id.* (citing *Kahn v. Lynch Commc'n Sys., Inc.*, 638 A.2d 1110, 1113–14 (Del. 1994) (quoting *Ivanhoe Partners v. Newmont Mining Corp.*, 535 A.2d 1334, 1344 (Del. 1987)); *In re Morton's Rest. Grp., Inc. S'holders Litig.*, 74 A.3d 656, 664–65 (Del. Ch. 2013); *Williamson v. Cox Commc'ns, Inc.*, 2006 WL 1586375, at *4, *5 (Del. Ch. June 5, 2006); *In re Cysive, Inc. S'holders Litig.*, 836 A.2d 531, 551–52, 552 n.30 (Del. Ch. 2003); *In re PBN Holding Co. S'holders Litig.*, 2006 WL 2403999, at *9 (Del. Ch. Aug. 18, 2006) (noting that the test for actual control "is not an easy one to satisfy" and can only be met where "stockholders who, although lacking a clear majority, have such formidable voting and managerial power that they, as a practical matter, are no differently situated than if they had majority voting control"); *Superior Vision Servs., Inc. v. ReliaStar Life Ins. Co.*, 2006 WL 2521426, at *4 (Del. Ch. Aug. 25, 2006) (examining *Kahn v. Lynch*, 638 A.2d at 1114; *Cox Commc'ns, Inc.,* 2006 WL 1586375 at *5; *In re W. Nat'l Corp. S'holders Litig.*, 2000 WL 710192, at *20 (Del. Ch. May 22, 2000))).

3

the business and affairs of [Financial Holdings] would be managed by a board of directors that would be subject to annual stockholder elections.

At bottom, plaintiffs ask the Court to impose fiduciary obligations on a relatively nominal stockholder, not because of any coercive power that stockholder could wield over the board's ability to independently decide whether or not to approve the merger, but because of pre-existing contractual obligations with that stockholder that constrain the business or strategic options available to the corporation. Plaintiffs have cited no legal authority for that novel proposition, and I decline to create such a rule.[9]

After carefully analyzing the pled facts and the relevant precedent, the Chancellor held:

[T]here are no well-pled facts from which it is reasonable to infer that KKR could prevent the [Financial Holdings] board from freely exercising its independent judgment in considering the proposed merger or, put differently, that KKR had the power to exact retribution by removing the [Financial Holdings] directors from their offices if they did not bend to KKR's will in their consideration of the proposed merger.[10]

Although the plaintiffs reiterate their position on appeal, the Chancellor correctly applied the law and we see no reason to repeat his lucid analysis of this question.

II.    **The Court of Chancery Correctly Held That The Fully Informed, Uncoerced Vote Of The Disinterested Stockholders Invoked The Business Judgment Rule Standard Of Review**

On appeal, the plaintiffs further contend that, even if the Chancellor was correct in determining that KKR was not a controlling stockholder, he was wrong to dismiss the complaint because they contend that if the entire fairness standard did not apply, *Revlon*[11] did, and the plaintiffs argue that they pled a *Revlon* claim against the defendant directors. But, as the defendants point out, the plaintiffs did not fairly argue below that *Revlon*

---

[9] *In re KKR Fin. Holdings*, 101 A.3d at 994.
[10] *Id.* at 995.
[11] *Revlon v. MacAndrews & Forbes Holdings, Inc.*, 506 A.2d 173 (Del. 1986).

applied and even if they did, they ignore the reality that Financial Holdings had in place an exculpatory charter provision, and that the transaction was approved by an independent board majority and by a fully informed, uncoerced stockholder vote.[12] Therefore, the defendants argue, the plaintiffs failed to state a non-exculpated claim for breach of fiduciary duty.

But we need not delve into whether the Court of Chancery's determination that *Revlon* did not apply to the merger is correct for a single reason: it does not matter. Because the Chancellor was correct in determining that the entire fairness standard did not apply to the merger, the Chancellor's analysis of the effect of the uncoerced, informed stockholder vote is outcome-determinative, even if *Revlon* applied to the merger.

As to this point, the Court of Chancery noted, and the defendants point out on appeal, that the plaintiffs did not contest the defendants' argument below that if the merger was not subject to the entire fairness standard, the business judgment standard of review was invoked because the merger was approved by a disinterested stockholder

---

[12] The Court of Chancery indicated that the merger was not subject to review under *Revlon* because KKR was a widely held, public company and that Financial Holdings's stockholders would therefore own stock after the merger in a company without a controlling stockholder. *In re KKR Fin. Holdings*, 101 A.3d at 989. On appeal, the plaintiffs argue that that observation was incorrect and that ownership in KKR was not dispersed after the merger because "KKR is a limited partnership *that is controlled by its managing partner*, which is in turn controlled by KKR's founders." Opening Br. at 20 (emphasis in original). The defendants, for their part, stress that the plaintiffs' focus on *Revlon* is a novel one in the course of this case, and that claims such as this should be made in the trial court initially, and not on appeal. Although we do not reach this issue, we note that the defendants are correct in their argument that the plaintiffs should have fairly raised their *Revlon* argument below and did not. Consistent with their failure to argue the point fairly below, the plaintiffs press this argument on appeal without citation to supporting facts pled in the complaint.

majority.[13] The Chancellor agreed with that argument below, and adhered to precedent supporting the proposition that when a transaction not subject to the entire fairness standard is approved by a fully informed, uncoerced vote of the disinterested stockholders, the business judgment rule applies.[14] Although the Chancellor took note of the possible conflict between his ruling and this Court's decision in *Gantler v. Stephens*,[15] he reached the conclusion that *Gantler* did not alter the effect of legally required stockholder votes on the appropriate standard of review.[16] Instead, the Chancellor read *Gantler* as a decision solely intended to clarify the meaning of the precise term "ratification."[17] He had two primary reasons for so finding. First, he noted that any statement about the effect a statutorily required vote had on the appropriate standard of review would have been dictum because in *Gantler* the Court held that the disclosures regarding the vote in question—a vote on an amendment to the company's charter—were

---

[13] *In re KKR Fin. Holdings*, 101 A.3d at 1001 ("[P]laintiffs do not disagree with defendants' position that the legal effect of a fully informed stockholder vote of a transaction with a non-controlling stockholder is that the business judgment rule applies and insulates the transaction from all attacks other than on the grounds of waste, even if a majority of the board approving the transaction was not disinterested or independent."); Answering Br. at 28–29.

[14] *In re KKR Fin. Holdings*, 101 A.3d at 1001 ("This position is supported by numerous decisions, including [the Court of Chancery's] 1995 decision in *In re Wheelabrator Technologies, Inc. Shareholder Litigation*, and [its] later decision in *Harbor Finance*, which, in turn, recited numerous supporting authorities." (citing *In re Wheelabrator Techs., Inc. S'holders Litig.*, 663 A.2d 1194, 1200 (Del. Ch. 1995); *Harbor Fin. Partners v. Huizenga*, 751 A.2d 879, 890 (Del. Ch. 1999) (citing *Marciano v. Nakash*, 535 A.2d 400, 405 n.3 (Del. 1987); *In re Gen. Motors Class H S'holders Litig.*, 734 A.2d 611, 616 (Del. Ch. 1999); *Solomon v. Armstrong*, 747 A.2d 1098, 1113–17 (Del. Ch. 1999), *aff'd*, 746 A.2d 277 (Del. 2000))).

[15] 965 A.2d 695 (Del. 2009).

[16] *In re KKR Fin. Holdings*, 101 A.3d at 1001–02.

[17] *Id.* at 1002.

materially misleading.[18] Second, the Chancellor doubted that the Supreme Court would have "overrule[d] extensive Delaware precedent, including Justice Jacobs's own earlier decision in *Wheelabrator*, which involved a statutorily required stockholder vote to consummate a merger" without "expressly stat[ing] such an intention."[19]

---

[18] *Id.* ("The Supreme Court in *Gantler* did not expressly address the legal effect of a fully informed stockholder vote when the vote is statutorily required. Having determined that the proxy disclosures were materially misleading, the Supreme Court did not need to reach that question."); *Gantler*, 965 A.2d at 710.

[19] *In re KKR Fin. Holdings*, 101 A.3d at 1002.

Aside from the substantial authority cited by the Chancellor, there is additional precedent under Delaware law for the proposition that the approval of the disinterested stockholders in a fully informed, uncoerced vote that was required to consummate a transaction has the effect of invoking the business judgment rule. In citing to these authorities, we note that many of them used the term "ratification" in a looser sense than the clarified and narrow description that was given to that term in the scholarly *Gantler* opinion. Although the nomenclature was less precise, the critical reasoning of these opinions was centered on giving standard of review-invoking effect to a fully informed vote of the disinterested stockholders.

In many of the cases, that effect was given to a statutorily required vote or one required by the certificate of incorporation. *See Stroud v. Grace*, 606 A.2d 75, 83 (Del. 1992) ("Inherent in [enhanced scrutiny] is a presumption that a board acted in the absence of an informed shareholder vote ratifying the challenged action."); *Solomon*, 747 A.2d at 1127, 1133, *aff'd*, 746 A.2d 277 (dismissing a challenge to a spin-off of a subsidiary because a fully informed, uncoerced vote of the stockholders that was required under the corporation's charter invoked the business judgment rule); *In re Lukens Inc. S'holders Litig.*, 757 A.2d 720, 736–38 (Del. Ch. 1999), *aff'd sub nom. Walker v. Lukens, Inc.*, 757 A.2d 1278 (Del. 2000) (holding that the fully informed stockholder approval of a merger invoked the business judgment rule); *In re Gen. Motors Class H S'holders Litig.*, 734 A.2d 611, 616 (Del. Ch. 1999) ("Because the shareholders were afforded the opportunity to decide for themselves [whether to approve charter amendments in connection with a series of transactions] on accurate disclosures and in a non-coercive atmosphere, the business judgment rule applies . . . ."); *Weiss v. Rockwell Int'l. Corp.*, 1989 WL 80345, at *3, *7 (Del. Ch. July 19, 1989), *aff'd*, 574 A.2d 264 (Del. 1990) (dismissing a challenge to a charter amendment because it was approved by a fully informed vote of the disinterested stockholders); *Schiff v. RKO Pictures Corp.*, 104 A.2d 267, 271–72 (Del. Ch. 1954) (finding that the principles established in *Gottlieb v. Heyden Chemical Corp.*, 91 A.2d 57, 58 (Del. 1952), which held that voluntary stockholder approval of a stock option plan invoked the business judgment standard of review, were "equally applicable" to statutorily required stockholder approval of an asset sale to the company's chairman and 30% stockholder, requiring the plaintiffs to show "that the disparity between the money received and the value of the assets sold is so great that the court will infer that those passing judgment are guilty of improper motives or are recklessly indifferent to or intentionally disregarding the interest of the whole body of stockholders"); *Cole v. Nat'l Cash Credit Ass'n*, 156 A. 183, 188 (Del. Ch. 1931) ("The

same presumption of fairness that supports the discretionary judgment of the managing directors must also be accorded to the majority of stockholders whenever they are called upon to speak for the corporation in matters assigned to them for decision, as is the case at one stage of the proceedings leading up to a sale of assets or a merger. No rational ground of distinction can be drawn in this respect between the directors on the one hand and the majority of stockholders on the other."); *MacFarlane v. N. Am. Cement Corp.*, 157 A. 396, 398 (Del. Ch. 1928) ("When, therefore, the law provided that a merger might be effected if approved by the votes of stockholders of each corporation representing two-thirds of its total capital stock, it was no doubt believed that the interests of all the stockholders in the merging companies would be sufficiently safeguarded. Such being the case, it is manifest that the court should not, by its injunctive process, prevent a merger so approved unless it is clear that it would be so injurious and unfair to some minority complaining stockholders as to be shocking, and the court is convinced that it is so grossly unfair to such stockholders as to be fraudulent."); *see also In re Morton's*, 74 A.3d at 663 n.34 ("[W]hen disinterested approval of a sale to an arm's-length buyer is given by a majority of stockholders who have had the chance to consider whether or not to approve the transaction for themselves, there is a long line and sensible tradition of giving deference to the stockholders' voluntary decision, invoking the business judgment rule standard of review . . . ."); *In re S. Peru Copper Corp. S'holder Derivative Litig.*, 52 A.3d 761, 793 n.113 (Del. Ch. 2011) ("[I]t has long been my understanding of Delaware law, that the approval of an uncoerced, disinterested electorate of a merger (including a sale) would have the effect of invoking the business judgment rule standard of review."); *Sample v. Morgan*, 914 A.2d 647, 663 (Del. Ch. 2007) (footnote omitted) ("When uncoerced, fully informed, and disinterested stockholders approve a specific corporate action, the doctrine of ratification, in most situations, precludes claims for breach of duty attacking that action."); *In re PBN Holding Co.*, 2006 WL 2403999, at *14 ("[O]utside the [controlling stockholder] context, proof that an informed, non-coerced majority of the disinterested stockholders approved an interested transaction has the effect of invoking business judgment rule protection for the transaction and, as a practical matter, insulating the transaction from revocation and its proponents from liability."); *Apple Comput., Inc. v. Exponential Tech., Inc.*, 1999 WL 39547, at *7 (Del. Ch. Jan. 21, 1999) (noting that if an informed vote of the stockholders approved an asset sale potentially subject to § 271, that would moot any statutory claim and invoke the business judgment rule); William T. Allen et al., *Function Over Form: A Reassessment of Standards of Review in Delaware Corporation Law*, 56 BUS. LAW. 1287, 1317–18 (2001) [hereinafter *Function Over Form*] ("Under present Delaware law, a fully informed majority vote *of the disinterested stockholders* that approves a transaction (other than a merger with a controlling stockholder) has the effect of insulating the directors from all claims except waste.").

In other cases, the vote may not have been statutorily required, but there was no suggestion that that factor was necessary for the vote to be given effect in determining the judicial standard of review. *See Marciano v. Nakash*, 535 A.2d 400, 405 n.3 (Del. 1987) ("[A]pproval by fully-informed disinterested stockholders . . . permits invocation of the business judgment rule . . . ."); *Michelson v. Duncan*, 407 A.2d 211, 224 (Del. 1979) ("'Where there has been independent stockholder ratification of interested director action, the objecting stockholder has the burden of showing that no person of ordinary sound business judgment would say that the consideration received for the options was a fair exchange for the options granted.'" (internal citation omitted)).

On appeal, the plaintiffs make *Gantler* a central part of their argument, even though they did not fairly present this point below. They now argue that *Gantler* bound the Court of Chancery to give the informed stockholder vote no effect in determining the standard of review. They contend that the Chancellor's reading of *Gantler* as a decision focused on the precise term "ratification" and not a decision intended to overturn a deep strain of precedent it never bothered to cite, was incorrect.[20] The plaintiffs also argue that they should be relieved of their failure to argue this point fairly below in the interests of justice.[21]

Although we disagree with the plaintiffs that this sort of case provides a sound basis for relieving a sophisticated party of its failure to present its position properly to the trial court, even if we agreed it would not aid the plaintiffs. No doubt *Gantler* can be read in more than one way, but we agree with the Chancellor's interpretation of that decision and do not accept the plaintiffs' contrary one. Had *Gantler* been intended to unsettle a long-standing body of case law, the decision would likely have said so.[22] Moreover, as the Chancellor noted, the issue presented in this case was not even squarely

---

[20] Related to their arguments over the proper interpretation of *Gantler*, the parties have engaged in an interesting debate about whether this Court's decision in *In re Santa Fe Pacific Corporation Shareholder Litigation* supports their respective positions. 669 A.2d 59 (Del. Ch. 1995). There are colorable arguments on both sides, and a learned article has a thoughtful consideration of that point. J. Travis Laster, *The Effect of Stockholder Approval on Enhanced Scrutiny*, 40 WM. MITCHELL L. REV. 1443, 1471–77 (2014) [hereinafter *Effect of Stockholder Approval*]. For present purposes, however, we think it unnecessary to engage in that debate, when the overwhelming weight of our state's case law supports the Chancellor's decision below.

[21] Supr. Ct. R. 8 ("Only questions fairly presented to the trial court may be presented for review; provided, however, that when the interests of justice so require, the Court may consider and determine any question not so presented.").

[22] *See In re KKR Fin. Holdings*, 101 A.3d at 1002; *see also Effect of Stockholder Approval*, *supra* note 20, at 1482.

9

before the Court in *Gantler* because it found the relevant proxy statement to be materially misleading.[23]   To erase any doubt on the part of practitioners, we embrace the Chancellor's well-reasoned decision and the precedent it cites to support an interpretation of *Gantler* as a narrow decision focused on defining a specific legal term, "ratification," and not on the question of what standard of review applies if a transaction not subject to the entire fairness standard is approved by an informed, voluntary vote of disinterested stockholders.  This view is consistent with well-reasoned Delaware precedent.[24]

Furthermore, although the plaintiffs argue that adhering to the proposition that a fully informed, uncoerced stockholder vote invokes the business judgment rule would

---

[23] *In re KKR Fin. Holdings*, 101 A.3d at 1002; *Gantler*, 965 A.2d at 710.

[24] *See supra* notes 14 & 19.  In addition to the cases previously cited for the proposition that an uncoerced, fully informed vote of the disinterested stockholders invokes the business judgment rule standard of review, the tradition of giving burden-shifting effect to a majority-of-the-minority vote in a controlling stockholder going-private merger also supports our view that a statutorily required vote has historically been taken into account in determining the standard of review. In fact, in the case of *Greene v. Dunhill International, Inc.*, the Court of Chancery refused to invoke the business judgment rule because the merger in question involved a controlling stockholder as the buyer, the court cited to a case invoking the business judgment based on a stockholder vote, and indicating that it stood for the proposition that "[i]n the absence of divided interests, the judgment of the majority stockholders . . . is presumed made in good faith and inspired by a bona fides of purpose."  249 A.2d 427, 430 (Del. Ch. 1968) (citing *Cole*, 156 A. at 188). The entire strand of our entire controlling stockholder law, running from *Dunhill*, to *Weinberger v. UOP, Inc.*, 457 A.2d 701 (Del. 1983), to *Kahn v. Lynch*, to *Kahn v. M&F Worldwide Corp.*, 88 A.3d 635 (Del. 2014), has focused on what effect of fully informed, uncoerced approval of the disinterested stockholders should have, and has never focused on whether the vote was statutorily required.  Furthermore, although there has been the requirement that the disinterested vote be determinative in giving standard of review influencing effect to a stockholder vote in a controlling stockholder merger, e.g., by having the merger subject to a majority of the minority condition, this Court has never held that the stockholders had to be asked separately to "ratify" the board's actions for that effect to be given.  Rather, it has been the ability of an uncoerced group of informed stockholders to freely accept for themselves whether a transaction was good for them that gave rise to the effect on the standard of review applied in any post-closing challenge.

10

impair the operation of *Unocal*[25] and *Revlon*, or expose stockholders to unfair action by directors without protection, the plaintiffs ignore several factors. First, *Unocal* and *Revlon* are primarily designed to give stockholders and the Court of Chancery the tool of injunctive relief to address important M & A decisions in real time, before closing. They were not tools designed with post-closing money damages claims in mind, the standards they articulate do not match the gross negligence standard for director due care liability under *Van Gorkom*,[26] and with the prevalence of exculpatory charter provisions, due care liability is rarely even available.

Second and most important, the doctrine applies only to fully informed, uncoerced stockholder votes, and if troubling facts regarding director behavior were not disclosed that would have been material to a voting stockholder, then the business judgment rule is not invoked.[27] Here, however, all of the objective facts regarding the board's interests, KKR's interests, and the negotiation process, were fully disclosed.

Finally, when a transaction is not subject to the entire fairness standard, the long-standing policy of our law has been to avoid the uncertainties and costs of judicial

---

[25] *Unocal Corp. v. Mesa Petroleum Co.*, 493 A.2d 946 (Del. 1985).

[26] *Smith v. Van Gorkom*, 488 A.2d 858 (Del. 1985).

[27] *See Williams v. Geier*, 671 A.2d 1368, 1380–83 (Del. 1996) (noting that "[a]n otherwise valid stockholder vote may be nullified by a showing that the structure or circumstances of the vote were impermissibly coercive"); *In re Rural Metro Corp.*, 88 A.3d 54, 84 n.10 (Del. Ch. 2014) ("Because the Proxy Statement contained materially misleading disclosures and omissions, this case does not provide any opportunity to consider whether a fully informed stockholder vote would lower the standard of review from enhanced scrutiny to the business judgment rule."); *Huizenga*, 751 A.2d at 898–99 ("If the corporate board failed to provide the voters with material information undermining the integrity or financial fairness of the transaction subject to the vote, no ratification effect will be accorded to the vote and the plaintiffs may press all of their claims. . . . In this regard, it is noteworthy that Delaware law does not make it easy for a board of directors to obtain 'ratification effect' from a stockholder vote. The burden to prove that the vote was fair, uncoerced, and fully informed falls squarely on the board.").

11

second-guessing when the disinterested stockholders have had the free and informed chance to decide on the economic merits of a transaction for themselves. There are sound reasons for this policy. When the real parties in interest—the disinterested equity owners—can easily protect themselves at the ballot box by simply voting no, the utility of a litigation-intrusive standard of review promises more costs to stockholders in the form of litigation rents and inhibitions on risk-taking than it promises in terms of benefits to them. [28] The reason for that is tied to the core rationale of the business judgment rule,

---

[28] *See Williams*, 671 A.2d at 1381 (where a stockholder vote is statutorily required such as for a merger or a charter amendment, "the stockholders control their own destiny through informed voting," and calling this "the highest and best form of corporate democracy"); *In re Morton's*, 74 A.3d at 663 n.34 ("Traditionally, our equitable law of corporations has applied the business judgment standard of review to sales to arms'-length buyers when an informed, uncoerced vote of the disinterested electorate has approved the transaction. This effect on the standard of review is, of course, only available to disinterested stockholder approval for good reason—only disinterested stockholder approval is a strong assurance of fairness." (internal citations omitted)); *In re Netsmart Techs. Inc. S'holders Litig.*, 924 A.2d 171, 207 (Del. Ch. 2007) ("Delaware corporate law strives to give effect to business decisions approved by properly motivated directors and by informed, disinterested stockholders. By this means, our law seeks to balance the interest in promoting fair treatment of stockholders and the utility of avoiding judicial inquiries into the wisdom of business decisions. Thus, doctrines . . . operate to keep the judiciary from second-guessing transactions when disinterested stockholders have had a fair opportunity to protect themselves by voting no."); *In re Lear Corp. S'holder Litig.*, 926 A.2d 94, 114–15 (Del. Ch. 2007) ("Delaware corporation law gives great weight to informed decisions made by an uncoerced electorate. When disinterested stockholders make a mature decision about their economic self-interest, judicial second-guessing is almost completely circumscribed by the doctrine of ratification."); *In re PBN Holding Co.*, 2006 WL 2403999, at *15 ("[W]hen most of the affected minority affirmatively approves the transaction, their self-interested decision to approve is sufficient proof of fairness to obviate a judicial examination of that question."); *Huizenga*, 751 A.2d at 901 ("If fully informed, uncoerced, independent stockholders have approved the transaction, they have . . . made the decision that the transaction is a fair exchange. As such, it is difficult to see the utility of allowing litigation to proceed in which the plaintiffs are permitted discovery and a possible trial . . . . In this day and age in which investors also have access to an abundance of information about corporate transactions from sources other than boards of directors, it seems presumptuous and paternalistic to assume that the court knows better in a particular instance than a fully informed corporate electorate with real money riding on the corporation's performance." (internal citations omitted)); *Effect of Stockholder Approval*, *supra* note 20, at 1457 n.50 ("There is a gut-level sense of fairness to [the result that the business

which is that judges are poorly positioned to evaluate the wisdom of business decisions and there is little utility to having them second-guess the determination of impartial decision-makers with more information (in the case of directors) or an actual economic stake in the outcome (in the case of informed, disinterested stockholders). In circumstances, therefore, where the stockholders have had the voluntary choice to accept or reject a transaction, the business judgment rule standard of review is the presumptively correct one and best facilitates wealth creation through the corporate form.

For these reasons, therefore, we affirm the Court of Chancery's judgment on the basis of its well-reasoned decision.

---

judgment rule is invoked where there is an uncoerced and fully informed vote of the disinterested stockholders to approve the action of a compromised board]. If the fully informed stockholders conclude collectively that they want an outcome, why should self-appointed stockholder plaintiffs be able to seek to hold directors liable for a decision that a majority of the stockholders endorsed? Absent disclosure violations or coercion, there is something contradictory about stockholders collectively saying, 'Yes, I want this merger' and then for the stockholder plaintiffs to seek damages from the directors for having approved the deal and recommended it to the stockholders in the first place."); *cf. Function Over Form*, *supra* note 19, at 1307 ("If . . . the vote is uncoerced and is fully informed, there is no reason why the shareholder vote should not be given that effect, particularly given the [Delaware Supreme Court's] rightful emphasis on the importance of the shareholder franchise and its exercise.").