**COURT OF CHANCERY**
OF THE
**STATE OF DELAWARE**

DONALD F. PARSONS, JR.
VICE CHANCELLOR

New Castle County Courthouse
500 N. King Street, Suite 11400
Wilmington, Delaware 19801-3734

Date Submitted: October 5, 2015
Date Decided: October 29, 2015

Seth D. Rigrodsky, Esq.
Brian D. Long, Esq.
Gina M. Serra, Esq.
Rigrodsky & Long, P.A.
2 Righter Parkway, Suite 120
Wilmington, DE 19803

Michael J. Maimone, Esq.
Gregory E. Stuhlman, Esq.
Greenberg Traurig
The Nemours Building
1007 North Orange Street, Suite 1200
Wilmington, DE 19801

Gregory P. Williams, Esq.
J. Scott Pritchard, Esq.
Richards, Layton & Finger, P.A.
920 North King Street
Wilmington, DE 19801

Bradley R. Aronstam, Esq.
Ross Aronstam & Moritz LLP
100 South West Street, Suite 400
Wilmington, DE 19801

Re:  *In re Zale Corporation Stockholders Litigation*
Civil Action No. 9388-VCP

Dear Counsel:

On October 1, 2015, this Court issued its Memorandum Opinion (the

"Opinion")[1] denying Defendant Merrill Lynch's[2] motion to dismiss Plaintiffs'

---

[1]  *In re Zale Corp. S'holders Litig.*, 2015 WL 5853693 (Del. Ch. Oct. 1, 2015).

[2]  Terms not otherwise defined herein have the same meaning as in the
Opinion.

Complaint, which alleged that Merrill Lynch aided and abetted the Director Defendants' breach of their duty of care. On October 5, 2015, Merrill Lynch timely moved for reargument pursuant to Court of Chancery Rule 59(f) (the "Motion"). Plaintiffs opposed the Motion on October 9. For the reasons that follow, the Motion is granted.

## I. Legal Standard

To prevail on a motion for reargument under Rule 59(f), the moving party must demonstrate that the Court either overlooked a decision or principle of law that would have controlling effect or misapprehended the facts or the law such that the outcome of the decision would be different.[3] To justify reargument, a misapprehension of the facts or the law must be both material and outcome-determinative of the earlier decision.[4] Mere disagreement with the Court's

---

[3] *See, e.g.*, *Preferred Invs., Inc. v. T&H Bail Bonds*, 2013 WL 6123176, at *4 (Del. Ch. Nov. 21, 2013); *Medek v. Medek*, 2009 WL 2225994, at *1 (Del. Ch. July 27, 2009); *Reserves Dev. LLC v. Severn Sav. Bank, FSB*, 2007 WL 4644708, at *1 (Del. Ch. Dec. 31, 2007).

[4] *See, e.g.*, *Preferred Invs.*, 2013 WL 6123176, at *4; *Aizupitis v. Atkins*, 2010 WL 318264, at *1 (Del. Ch. Jan. 27, 2010); *Medek*, 2009 WL 2225994, at *1.

resolution of a matter is not sufficient, and the Court will deny a motion for reargument that does no more than restate a party's prior arguments.[5]

## II.     The Motion Supports Reconsideration of the Opinion's Reasoning

In the Motion, Merrill Lynch contends that its motion to dismiss should be granted based on a Delaware Supreme Court decision that was issued on October 2, 2015, one day after I issued the Opinion.  The crux of the Motion is that, in evaluating whether the Director Defendants breached their fiduciary duties, I applied the *Revlon* enhanced scrutiny standard of review ("*Revlon*") when I should have applied the business judgment rule standard of review ("BJR").  In *In re KKR Financial Holdings LLC Shareholder Litigation*, this Court held that, although the entire fairness standard of review generally would apply to a merger where a majority of the corporation's directors were not independent, BJR applies when the merger is approved by a majority vote of disinterested, fully informed stockholders, even if that vote is statutorily required as opposed to voluntarily

---

[5]     *See, e.g.*, *Preferred Invs.*, 2013 WL 6123176, at \*4; *In re Mobilactive Media, LLC*, 2013 WL 1900997, at \*1 (Del. Ch. May 8, 2013); *Brown v. Wiltbank*, 2012 WL 5503832, at \*1 (Del. Ch. Nov. 14, 2012).

sought by the directors.[6] The Supreme Court affirmed that holding in *Corwin v. KKR Financial Holdings LLC* and agreed that the fully informed vote of a majority of disinterested stockholders also invokes BJR review in cases in which *Revlon* otherwise would apply.[7]

In the Opinion, I found, based on the allegations in the Complaint, that the Merger was approved by a majority of disinterested stockholders in a fully informed vote.[8] Despite acknowledging the strength of the reasoning in *KKR*, I declined to follow this Court's holding in that case because I interpreted the Supreme Court's decision in *Gantler v. Stephens*[9] as "holding that an enhanced standard of review cannot be pared down to the business judgment rule as a result of a statutorily required stockholder vote, even one rendered by a fully informed, disinterested majority of stockholders."[10] As Merrill Lynch notes, however, the

---

[6]     101 A.3d 980, 1001 (Del. Ch. 2014), *aff'd sub nom.*, *Corwin v. KKR Fin. Hldgs. LLC*, – A.3d –, 2015 WL 5772262 (Del. Oct. 2, 2015).

[7]     2015 WL 5772262, at *3 ("[T]he Chancellor's analysis of the effect of the uncoerced, informed stockholder vote is outcome-determinative, even if *Revlon* applied to the merger.").

[8]     *Zale*, 2015 WL 5853693, at *9-10.

[9]     965 A.2d 695 (Del. 2009).

[10]     *Zale*, 2015 WL 5853693, at *10.

Supreme Court in *Corwin* interpreted *Gantler* "as a narrow decision focused on defining a specific legal term, 'ratification,' and not on the question of what standard of review applies if a transaction not subject to the entire fairness standard is approved by an informed, voluntary vote of disinterested stockholders."[11]

I therefore grant Merrill Lynch's motion for reargument as to my interpretation of *Gantler* because, in the Opinion, I misapprehended the law regarding the cleansing effect of a fully informed, statutorily required vote by a disinterested majority of stockholders in the circumstances of the *Zale* case. This misapprehension was both material and potentially outcome-determinative as to Merrill Lynch's aiding and abetting liability because I incorrectly applied *Revlon* rather than BJR when I reviewed the Complaint to determine whether it adequately alleged that the Director Defendants breached their fiduciary duties.

### III.    BJR Is the Appropriate Standard

In the Opinion, I concluded, under *Revlon*, that it was reasonably conceivable that the Director Defendants breached their fiduciary duty of care and that Merrill Lynch aided and abetted that breach.[12]  Merrill Lynch argues that BJR

---

[11]    2015 WL 5772262, at *5.

[12]    *Zale*, 2015 WL 5853693, at *18-20, *22.

rather than *Revlon* should apply because: (1) the Supreme Court held that the fully informed vote of a disinterested majority of stockholders invokes BJR review in cases in which *Revlon* otherwise would apply; and (2) I held that the Merger was approved by a majority of disinterested stockholders in a fully informed vote.

Plaintiffs oppose the Motion and contend that, even under *Corwin*, BJR should not apply in this case because a majority of the Zale stockholders approving the Merger were not disinterested and the vote was not fully informed. I explicitly addressed in the Opinion, however, the grounds on which Plaintiffs base these arguments. Specifically, I concluded that Plaintiffs failed to allege adequately that Golden Gate was interested as to the Merger or that the Proxy materially was deficient. Because Plaintiffs fail to highlight a decision or principle of law or a fact that I overlooked or misapprehended in the Opinion that would justify reargument on this point, their opposition represents a mere disagreement with the Opinion that does no more than restate their prior arguments. I decline, therefore, to revisit those arguments and agree with Merrill Lynch that BJR is the appropriate standard of review based on my previous determination that Plaintiffs had failed to allege facts from which one conceivably could infer that the Merger was not approved by a disinterested majority of Zale's stockholders in a fully informed vote.

## IV.     The Motion Supports Dismissal of the Complaint

## A.     The standard for a breach of the duty of care is gross negligence, not waste

Having granted in part Merrill Lynch's motion for reargument and decided that BJR is the appropriate standard of review, my final task is to determine whether the Opinion's conclusion as to Merrill Lynch's motion to dismiss should change. As an initial matter, I must ascertain whether: (1) the cleansing effect of the stockholder vote requires Plaintiffs to state a claim for waste regarding the Director Defendants' actions in order to defeat Merrill Lynch's motion to dismiss; or (2) whether Plaintiffs may rebut the BJR presumption as to the Director Defendants' duty of care and defeat Merrill Lynch's motion to dismiss by showing that it is reasonably conceivable that the Director Defendants' actions were grossly negligent.

Merrill Lynch argues that "[u]nder the business judgment rule, plaintiffs must 'show that the board's decision cannot be attributed to any rational business purpose—which, in effect, is the standard for waste under Delaware law.'"[13] Further, in *KKR*, Chancellor Bouchard stated, "the legal effect of a fully-informed

---

[13]     Merrill Lynch's Mot. ¶ 8 (quoting *Calma on Behalf of Citrix Sys., Inc. v. Templeton*, 114 A.3d 563, 577 (Del. Ch. 2015)).

stockholder vote of a transaction with a non-controlling stockholder is that the business judgment rule applies and insulates the transaction from all attacks other than on the grounds of waste."[14]

In *Corwin*, however, although the Supreme Court generally affirmed *KKR*, the Court also suggested that "the gross negligence standard for director due care liability under *Van Gorkom*" is the proper standard for evaluating "post-closing money damages claims."[15] While the Court in *Corwin* quotes *KKR* and a law review article for the proposition that a fully informed majority vote of disinterested stockholders insulates directors from all claims except waste in the explanatory parentheticals of two footnotes,[16] the Court itself does not hold that anywhere in its opinion. And, in *In re TIBCO Software, Inc. Stockholders Litigation*, which was issued after *Corwin*, Chancellor Bouchard, the author of *KKR*, denied a motion to dismiss after finding it reasonably conceivable that the directors had breached their duty of care by acting in a grossly negligent manner,

---

[14]    101 A.3d at 1001.

[15]    2015 WL 5772262, at *6.

[16]    *See id.* at *4 nn.13 & 19 (quoting *KKR*, 101 A.3d at 1001; and William T. Allen, Jack B. Jacobs & Leo E. Strine, Jr., *Function Over Form: A Reassessment of Standards of Review in Delaware Corporation Law*, 56 BUS. LAW. 1287, 1317-18 (2001)).

despite the absence of any indication that the merger was not approved by a majority of disinterested stockholders in a fully informed vote.[17]

Based on the language in *Corwin* and the approach taken by this Court in *TIBCO*, I conclude that when reviewing a board of directors' actions during a merger process after the merger has been approved by a majority of disinterested stockholders in a fully informed vote, the standard for finding a breach of the duty of care under BJR is gross negligence. Thus, although I concluded in the Opinion that it was reasonably conceivable that the Director Defendants breached their duty of care under a *Revlon* reasonableness standard, I have reexamined in the context of the pending Motion the Director Defendants' actions to determine whether it is reasonably conceivable that they were grossly negligent.[18] If it is reasonably conceivable that the Director Defendants breached their duty of care by acting in a grossly negligent manner, then my conclusion in the Opinion as to Merrill Lynch's

---

[17]   2015 WL 6155894 (Del. Ch. Oct. 20, 2015).

[18]   As I noted in *Zale*, "[t]he threshold for finding a breach of the duty of care in the *Revlon* reasonableness context is lower than in the business judgment rule context . . . [which] is predicated upon concepts of gross negligence." 2015 WL 5853693, at *19 n.106 (citing *In re Netsmart Techs., Inc. S'holders Litig.,* 924 A.2d 171, 192 (Del. Ch. 2007); and *McMullin v. Beran,* 765 A.2d 910, 921 (Del. 2000)).

aiding and abetting liability would not change. If, however, it is not reasonably conceivable that the Director Defendants were grossly negligent, then there would be no predicate fiduciary duty breach for Merrill Lynch to have aided and abetted, and Merrill Lynch's motion to dismiss would be granted.

### B. It is not reasonably conceivable that the Director Defendants were grossly negligent

To support an inference of gross negligence, "the decision has to be so grossly off-the-mark as to amount to reckless indifference or a gross abuse of discretion."[19] Delaware law instructs that the core inquiry in this regard is whether there was a real effort to be informed and exercise judgment.[20] "Judicial inquiry into whether directors have exercised 'due care' in the decision-making context . . . involves an examination of whether the directors informed themselves, before 'making a business decision, of all material information reasonably available to

---

[19] *Solash v. Telex Corp.*, 1988 WL 3587, at *9 (Del. Ch. 1988) (internal citations omitted).

[20] *In re Caremark Int'l Inc. Deriv. Litig.*, 698 A.2d 959, 968 (Del. Ch. 1996) ("Where a director in fact exercises a good faith effort to be informed and to exercise appropriate judgment, he or she should be deemed to satisfy fully the duty of attention.").

them.'"[21] "In the context of a motion to dismiss, then-Vice Chancellor Strine explained that gross negligence 'requires the articulation of facts that suggest a *wide* disparity between the process the directors used . . . and [a process] which would have been rational.'"[22]

In *TIBCO*, this Court found it reasonably conceivable that the target's board was grossly negligent in the context of a merger price that potentially was depressed due to an error in several capitalization tables as to the number of outstanding target company shares.[23] Although the target's financial advisor notified the board of the error, it did not notify the board that the acquirer had relied on the erroneous number of shares in making its bid. After learning of the error, the board met several times to "assess and respond to the situation"—just as the Director Defendants did after learning of Merrill Lynch's presentation to Signet—but the board did not inquire further with their financial advisor to

---

[21] R. FRANKLIN BALOTTI & JESSE A. FINKELSTEIN, THE DELAWARE LAW OF CORPORATIONS & BUSINESS ORGANIZATIONS § 4.15 at 4-105 (3d ed. 2013) (quoting *Aronson v. Lewis*, 473 A.2d 805, 812 (Del. 1984)).

[22] *TIBCO*, 2015 WL 6155894, at *23 (emphasis in original) (quoting *Guttman v. Huang*, 823 A.2d 492, 508 n.39 (Del. Ch. 2003)).

[23] *TIBCO*, 2015 WL 6155894, at *23-24.

determine if the acquirer had relied on the erroneous share count in making its

bid.[24]  Thus, Chancellor Bouchard stated:

> One rationally would expect, for example, the Board to press [its financial advisor], which was responsible for negotiating with potential bidders and interacted directly with [the acquirer], for a complete explanation concerning the circumstances of the share count error (*e.g.*, what caused it, who was responsible, etc.) and for whatever information it could provide concerning [the acquirer's] understanding of the share count error. . . . [T]he failure to make such basic inquiries does raise litigable questions over whether the Board acted in a grossly negligent manner and thus failed to satisfy its duty of care during the period between the discovery of the share count error and closing of the Merger.[25]

Although the board in *TIBCO* was exculpated from monetary liability for a breach

of the duty of care due to the 102(b)(7) provision in its charter, the Court found it

reasonably conceivable that the financial advisor aided and abetted the board's

duty of care breach by withholding the acquirer's reliance on the erroneous share

count in order to increase the odds of the merger being consummated, thereby

earning a significantly larger fee for its services.[26]

---

[24]     *Id.* at *23.

[25]     *Id.*

[26]     *Id.* at *24-26.

In this case, I noted in the Opinion that "[a]rguably, the Board's actions as to Merrill Lynch in this case constitute a breach of the duty of care under a gross negligence standard as well."[27]   Interestingly, in their opposition to the Motion, Plaintiffs made no argument that the Director Defendants breached their duty of care under a gross negligence standard.   Unlike the Court in *TIBCO*, I conclude that it is not reasonably conceivable that the Zale Director Defendants breached their duty of care by acting in a grossly negligent manner as to their engagement of Merrill Lynch.

My finding of reasonable conceivability as to the Director Defendants' duty of care breach in the Opinion was based on Plaintiffs' allegations that the Director Defendants, in examining whether Merrill Lynch would be an appropriate financial advisor, did no more than: (1) consider internally the possibility that Merrill Lynch may be conflicted; and (2) rely, without question, on Merrill Lynch's representations that it had "limited prior relationships [with Signet] and no conflicts."[28]   "Because of the central role played by investment banks in the evaluation, exploration, selection, and implementation of strategic alternatives,

---

[27]     *Zale*, 2015 WL 5853693, at *19 n.106.

[28]     *Id.* at *19.

directors must act reasonably to identify and consider the implications of the investment banker's compensation structure, relationships, and potential conflicts."[29]  Whereas in *TIBCO* the Court focused on the board's duty to investigate and inquire further after the disclosure of the share count error, the focus of the inquiry in this case was on whether the Director Defendants discharged their duty of care when they first engaged Merrill Lynch.

The key issues in evaluating a duty of care claim under the gross negligence standard are "whether there was a real effort to be informed and exercise judgment"[30] and "whether the directors informed themselves . . . of all material information reasonably available to them."[31]  The conduct of Merrill Lynch in this case is troubling, and it was disclosed only belatedly to the Zale Board.  I noted in the Opinion that it is reasonable to expect directors to take additional steps to obtain information material to the evaluation of their financial advisors' independence, such as by "negotiating for representations and warranties in the engagement letter as well as asking probing questions to determine what sorts of

---

[29]     *In re Rural Metro Corp.*, 88 A.3d 54, 90 (Del. Ch. 2014).

[30]     *Caremark*, 698 A.2d at 968.

[31]     BALOTTI & FINKELSTEIN, *supra* note 21 § 4.15 at 4-105.

past interactions the advisor has had with known potential buyers."[32]   Based on Merrill Lynch's conduct, I am not inclined to modify that statement.  In addition, had Merrill Lynch disclosed the Signet presentation to the Board up front, it would have better served the Zale stockholders and probably still could have obtained the engagement.

In any event, I referenced the additional steps mentioned above in the *Revlon* context addressed in the Opinion.  Applying a gross negligence standard, I do not find it reasonably conceivable that the Director Defendants' conduct amounted to "reckless indifference or a gross abuse of discretion" or that the facts "suggest a *wide* disparity between the process the directors used . . . and [a process] which would have been rational.'"[33]   I conclude, therefore, that the Complaint fails to allege adequately that the Director Defendants breached their duty of care under a gross negligence standard.  Because there is no basis for a predicate fiduciary duty breach, the Complaint also fails to allege that Merrill Lynch aided and abetted such a breach.

---

[32]   *Id.*

[33]   *See supra* notes 19-22 and accompanying text.

### V.        Conclusion

For the foregoing reasons, the Motion is granted.  Accordingly, I have reconsidered my Opinion in the context of this request for reargument.  The Complaint provides no basis for a showing of waste.  Assuming that under *Corwin* the gross negligence standard for a duty of care breach under BJR would apply, Plaintiffs have not alleged sufficient facts to make it reasonably conceivable that the Director Defendants breached their duty of care.  As a result, I dismiss the Complaint with prejudice as to the aiding and abetting claim against Merrill Lynch. The Opinion is hereby amended in a manner consistent with this Letter Opinion.

**IT IS SO ORDERED.**

Sincerely,

*/s/ Donald F. Parsons, Jr.*

Donald F. Parsons, Jr.
Vice Chancellor

DFP/ptp