# IN THE COURT OF CHANCERY OF THE STATE OF DELAWARE

| | | |
|---|---|---|
| IN RE ORBIT/FR, INC. | ) | |
| STOCKHOLDERS LITIGATION | ) | C.A. No. 2018-0340-SG |

## MEMORANDUM OPINION

Date Submitted: October 26, 2022
Date Decided: January 24, 2023

A. Thompson Bayliss, E. Wade Houston, and G. Mason Thomson, of ABRAMS & BAYLISS LLP, Wilmington, Delaware, *Attorneys for Plaintiff AB Value Partners, L.P.*.

Ashley R. Altschuler, Ethan H. Townsend, Harrison S. Carpenter, and Kevin M. Regan, of MCDERMOTT WILL & EMERY LLP, Wilmington, Delaware, *Attorneys for Defendants Microwave Vision S.A., Phillippe Garreau, and Arnaud Gandois*.

Daniel M. Silver, Benjamin A. Smyth, and Travis J. Ferguson, of McCARTER & ENGLISH, LLP, Wilmington, Delaware, *Attorneys for Defendant Douglas Merrill*.

Henry E. Gallagher Jr and Shaun Michael Kelly, of CONNOLLY GALLAGHER LLP, Wilmington, Delaware, *Attorneys for Defendant Per Iversen*.

**GLASSCOCK, Vice Chancellor**

This memorandum opinion is the latest incarnation of a long-running class action, asserting that a merger between a Delaware corporation, Orbit/FR, Inc. ("Orbit"), and its controller Microwave Vision, S.A. ("Micro"), was unfair to the class of minority stockholders. The lead Plaintiff is former stockholder AB Value Partners, L.P. ("Partners"). It replaced original lead Plaintiff Minerva Group L.P. ("Minerva")[1] and filed an amended complaint, styled the Substitute Complaint (the "SC"), on May 13, 2022.

Among the original Defendants was the movant here, Defendant Douglas Merrill. Merrill is a former director of Orbit who served on the special committee that negotiated sale of Orbit to Micro (the "Special Committee"). Minerva, however, voluntarily dismissed Merrill without prejudice. The SC, by contrast, again named Merrill as a defendant. That is understandable, as the SC alleges that Merrill was, in addition to serving as a supposedly independent director, an executive of Orbit whose job depended, or had depended, on the continued patronage of Orbit's controller, Micro. In other words, per Partners, Merrill was not independent, and given his dependence on Micro, he reasonably could be inferred to have facilitated an unfair sale to placate that entity.

---

[1] The circumstances of Partners replacement of Minerva are detailed in my memorandum opinion of January 9, 2023. *See In re Orbit/FR, Inc.*, 2023 WL 128530, (Del. Ch. Jan. 9, 2023). Those circumstances are not pertinent here.

The problem with this argument is that it is based on a fundamental error. The Plaintiff's counsel, confronted with this error at oral argument, forthrightly admitted that counsel had misread a document, which (upon casual reading) could be read to support a conclusion that Merrill served as an Orbit "President of Manufacturing and Supply Chain Strategies."[2] Partners now concedes that there are no facts from which I may infer that Merrill was employed by Orbit or otherwise dependent on Micro. Plaintiff, nonetheless, points to a personal relationship with another Defendant, Per Iverson, as overcoming the presumption of Merrill's independence. Iverson was a member of the Orbit board, and a senior executive of both Micro and Orbit. According to the complaint, in the past Iverson and Merrill were neighbors, their children were contemporaries, and Iverson and Merrill frequently went for bicycle rides together. Iverson was responsible for Merrill becoming a board member. That is the substance of the remaining claim against Merrill.

To survive a motion to dismiss here, in light of Orbit's exculpation clause,[3] the SC must allege facts that make it reasonably conceivable that Merrill breached his duty of loyalty to Orbit and its stockholders in his conduct while on the Special Committee. The SC does not suggest that Merrill had a personal interest in the transaction at issue, however. Nor does it allege facts suggesting that he acted in

---

[2] *See* Verified Substitute Class Action Complaint ¶ 12 n.1, Dkt. No. 145 (citing Orbit/FR, Inc., Annual Report (Form 10-K) at 27 (Mar. 31, 2010)).

[3] Opening Br. Supp. Def. Douglas Merrill's Mot. Dismiss Ex. A ¶ 8, Dkt. No. 152.

bad faith. The Plaintiff, accordingly, is reliant on the alleged fact that *Iverson* had divided loyalties as a fiduciary of both Orbit and Micro, and that I should thus infer that Iverson wanted Micro to acquire Orbit in a process and for a price that were unfair to the Orbit minority stockholders. The Plaintiff then attempts to imply that the relationship between Iverson and Merrill was so close and meaningful that I should infer that Merrill ignored his duty of loyalty in order to benefit Iverson's employer, Micro. If I could make such an inference reasonably, that would presumably state a cause of action for an unexculpated breach of duty against Merrill.[4] In other words, the Plaintiff's logic is sound and consonant with our case law. The allegations of fact, however, are an inadequate foundation to support the inferential load that the Plaintiff asks them to bear. The facts concerning the Iverson/Merrill relationship, even looked at in the manner most favorable to the Plaintiff, do not imply that Merrill allowed his fiduciary obligations to be overborne by a personal loyalty to Iverson or Micro. Instead, they represent a rather casual sharing of interests between neighbors. Because I cannot reasonably infer that Merrill's loyalty to Orbit was corrupted by his personal relationships, and since the

---

[4] *See In re Cornerstone Therapeutics Inc, Stockholder Litig.*, 115 A.3d 1173, 1179–80 (Del. 2015) ("When a director is protected by an exculpatory charter provision, a plaintiff can survive a motion to dismiss by that director defendant by pleading facts supporting a rational inference that the director harbored self-interest adverse to the stockholders' interests, acted to advance the self-interest of an interested party from whom they could not be presumed to act independently, or acted in bad faith.").

SC does not allege that he was interested in the transaction and does not plead facts implying Merrill's bad faith, the Motion to Dismiss must be granted.

I note, for the casual reader, that a fiduciary duty action has been adequately pled against Micro and the individual Defendants associated with Micro. This action, therefore, will go forward. Based on the current pleadings, however, it must do so without Special Committee member Merrill.

My reasoning is explained briefly, below.

## I. BACKGROUND[5]

This memorandum opinion focuses exclusively on Merrill's Motion to Dismiss and the arguments in support thereof.[6] Where possible, facts extraneous to the assessment of Merrill's arguments are not repeated here.

### A. *The Parties*

Orbit was a Delaware incorporated, Pennsylvania based corporation that was in the business of testing the performance of microwave emitting devices.[7] In 2008, Orbit stock traded on FINRA's Over-the-Counter Bulletin Board.[8] The company

---

[5] Unless otherwise noted, the facts referenced in this memorandum opinion are drawn from the Verified Substitute Class Action Complaint and the documents incorporated therein. *See generally* Verified Substitute Class Action Compl., Dkt. No. 145.

[6] Def. Douglas Merrill's Mot. Dismiss, Dkt. No. 151; Opening Br. Supp. Def. Douglas Merrill's Mot. Dismiss, Dkt. No. 152.

[7] Verified Substitute Class Action Compl. ¶ 7, Dkt. No. 145.

[8] *Id.*

merged into Defendant Micro in 2018 (the "Merger") following a cash only freeze-out originally—but not ultimately—conditioned on approval of an independent special committee and majority of the minority vote.[9]

Defendant Micro is a Paris based *société anonyme* that operated as Satimo S.A. ("Satimo") until 2008.[10] In 2008, under its previous name, Micro acquired a 61.6% interest in Orbit.[11]

Defendant Philippe Garreau was Saitmo S.A.'s principal from 1996 until its reorganization as Micro.[12] Following the reorganization, Garreau served as Micro's Chief Executive Officer.[13] Garreau sat on Orbit's board of directors (the "Board") as its chairman following Satimo's 2008 acquisition of its controlling interest in Orbit.[14]

Defendant Per Iversen was Satimo's Chief Technology Officer from 1998 until its reorganization and served Micro in the same capacity following Satimo's reorganization.[15] Following Satimo's 2008 purchase of a controlling stake in Orbit, Iversen served on the Board and as Orbit's Chief Executive Officer.[16]

---

[9] *Id.* ¶¶ 27, 33.
[10] *Id.* ¶ 8.
[11] *Id.* ¶¶ 7–8.
[12] *Id.* ¶ 9.
[13] *Id.*
[14] *Id.*
[15] *Id.* ¶ 10.
[16] *Id.*

Defendant Douglas Merrill "lived a couple of houses" away from Iversen in 2004, and the two became friends when they "bonded" over mountain biking.[17] Their children and wives "got to know each other."[18] Merrill and Iversen "established a Saturday mountain biking ritual" where they would discuss business, and Merrill believed Iversen valued his advice.[19] At Iversen's request, Merrill served on the Board starting in 2008.[20] Based upon Merrill's LinkedIn profile, the Complaint suggests that Merrill did not leave board service until the conclusion of the Merger.[21] However, it also states that he left the board between 2012 and 2014 before rejoining in 2016.[22] Merrill's only public board service was with Orbit.[23] Merrill served as a member of the two person special committee designated to evaluate the sufficiency of the Merger consideration.[24]

Plaintiff Partners is a former Orbit stockholder squeezed out in the Merger.[25] Partners held Orbit shares continuously from 2011 until the Merger and at the Merger's effective date, Partners held 71.6% of the minority block.[26]

---

[17] *Id.* ¶ 12 (internal quotations omitted).
[18] *Id.* (internal quotations omitted).
[19] *Id.* (internal quotations omitted).
[20] *Id.*
[21] *Id.* ¶ 13.
[22] *Id.* ¶ 12.
[23] *Id.*
[24] *Id.* ¶ 28.
[25] *Id.* ¶ 15.
[26] *Id.*

*B. Factual Background*

The Complaint alleges that in August 2009, Orbit and Micro executed a services agreement whereby Orbit was to pay Micro to run its operations (the "Services Agreement").[27] The Services Agreement, which was renewed "by tacit agreement" yearly, allegedly allowed Micro to "tunnel cash flow to itself" and cancellation would have been "all downside to [Micro]."[28] Orbit "'more or less functioned as a [Micro] subsidiary'" and the Board "never considered alternatives to the Services Agreement despite the obvious conflicts and unfairness."[29]

Orbit had a good year in 2022; nonetheless, Orbit deregistered "in May 2012, ending its SEC disclosure obligations."[30] The SC alleges that this allowed Micro to obfuscate Orbit's success and Micro's rent-seeking behaviors under the guise of operating cost reduction.[31]

In 2015, Plaintiff rejected Micro's advances to purchase its Orbit shares.[32] The SC alleges that, despite increased gross profits, Micro offered the Plaintiff less than Micro paid for its controlling stake in Orbit.[33] Further, the SC avers that Micro sought to "take advantage of [Orbit's] favorable trajectory" and eliminate Orbit's

---

[27] *Id.* ¶ 16.
[28] *Id.* ¶ 18 (internal quotations omitted).
[29] *Id.* ¶¶ 19–20.
[30] *Id.* ¶ 22.
[31] *Id.*
[32] *Id.* ¶ 23.
[33] *Id.*

7

"minority stockholders to facilitate a whole-company sale of [Micro]."[34] Dispatching the minority holders would have allowed Micro to "monetize its [Orbit] investment or eliminate derivative claims."[35]

Before recruiting Merrill back to the board in June 2016, Iversen had spoken to Stout Risus Ross, LLC ("Stout") about serving as Orbit's financial advisor in a freeze-out merger.[36] Micro submitted its formal indication of interest to purchase Orbit's minority float in August 2016 but conditioned its offer on the positive recommendation of an Orbit independent committee and a majority of the minority vote.[37] In response, the Board formed the Special Committee, composed of Merrill and non-party Matthew Finlay, to evaluate the offer.[38]

The Special Committee hired CBIZ Valuation Group, LLC ("CBIZ") to value Orbit.[39] Iversen was integral to the creation of CBIZ's valuation and, per the SC "Merrill back-channeled updates on CBIZ's work to Garreau and Iversen."[40] Iversen allegedly hid these communications by saving Merrill's cell number in Iverson's phone under the alias "Hugo Ramirez."[41] The complaint alleges that Iverson, aided

---

[34] *Id.* ¶ 24.
[35] *Id.*
[36] *Id.* ¶ 26.
[37] *Id.* ¶ 27.
[38] *Id.* ¶ 28.
[39] *Id.*
[40] *Id.* ¶ 29.
[41] *Id.*

by another Orbit executive, provided CBIZ with bad modeling data and when CBIZ had questions, Iversen, with Garreau's help, answered them.[42]

Plaintiff rejected two further offers to purchase its shares in 2017.[43] In response, counsel, who represented both Orbit and Micro, told the Special Committee that Micro had stricken the majority-of-the-minority condition of the deal.[44]

CBIZ declined to give a fairness opinion, and the Special Committee hired Stout as its new financial advisor.[45] Akin to their provision of material to CBIZ, Iversen and a member of Orbit management allegedly provided "suspect" information to Stout, but unlike CBIZ,[46] Stout accepted that information without question.[47] Despite trading above the offer price of $2.82 per share since January 1, 2016, Stout determined that Orbit's common stock was worth only $0.22 per share."[48]

In February 2018, Micro and the Special Committee agreed on a price of $3.30 per share.[49] Despite already agreeing to a price and Stout's allegedly unreliable valuation, the Special Committee requested that the Board approve a payment to

---

[42] *Id.* ¶¶ 29–31.
[43] *Id.* ¶ 32.
[44] *Id.* ¶ 33.
[45] *Id.* ¶¶ 34–35.
[46] *Id.* ¶¶ 29–31, 34.
[47] *Id.* ¶ 37.
[48] *Id.* ¶¶ 35–36.
[49] *Id.* ¶ 38.

Stout to "'commence efforts'" on a fairness opinion.[50]  The SC alleges that the Board did not consider Orbit's inchoate "claims for breach of fiduciary duty related to the Services Agreement," presumably including claims against the directors themselves.[51]  Stout presented its final fairness opinion in favor of the Merger to the Special Committee on March 26, 2018 and the Board approved the Merger.[52]  Micro adopted the merger agreement by written consent and the Merger closed on April 6, 2018.[53]  Allegedly deficient shareholder notification followed.[54]

### C. Procedural History

The procedural history of this action is complex and, although its intricacies were integral to my memorandum opinion of January 9, 2023,[55] they are of less import here.  A former stockholder, Minerva Group, LP ("Minerva"), brought a class action on behalf of the minority shareholders challenging the fairness of the merger.[56]  Minerva named Merrill as a defendant but dismissed him without prejudice on August 16, 2022.[57]  The original complaint withstood a motion to

---

[50] *Id.*
[51] *Id.* ¶ 39.
[52] *Id.* ¶ 40.
[53] *Id.*
[54] *Id.* ¶¶ 41–44.
[55] *See In re Orbit/FR, Inc.*, 2023 WL 128530.
[56] *See* Verified Class Action Compl., Dkt. No. 1.
[57] Order Dismissing Special Committee Defs. (Douglas Merrill and Matt Finlay), Dkt. No. 26.

dismiss,[58] and eventually, the parties reached an agreement and proposed a settlement, which included cash consideration for the minority stockholders.[59] However, Partners, holder of a majority of the minority of Orbit stock, objected to the settlement seeking to take over the litigation.[60]

After consideration of the proposed settlement and the objection, I allowed Partners to assume lead-plaintiff status and continue the litigation upon the posting of a bond representing the cash component of the settlement together with Minerva's requested attorney's fees and costs.[61] Partners filed the required bond.[62] I held that Partners could file an amended complaint, asserting certain elements of the purportedly unfair nature of the transaction, without prejudice to the right of the Defendants (Micro and certain Orbit fiduciaries) to oppose any amendment under Rule 15.[63] Partners did so in the SC.[64] A slew of motions to dismiss followed.[65] I held oral argument on these motions as well as motions to stay discovery on October

---

[58] Tr. Oral Arg. Defs.' Mot. Dismiss 60:20–65:6, Jan. 8, 2019, Dkt. No. 36.

[59] Stipulation of Compromise, Settlement, and Release, Dkt. No. 86.

[60] AB Value's Br. Obj. Proposed Settlement 26, Dkt. No. 106.

[61] Tr. Telephonic Settlement Hr'g 4:21–8:1, Dec. 21, 2021, Dkt. No. 135.

[62] Letter to The Honorable Sam Glasscock III from E. Wade Houston Regarding Completion of Escrow Deposit, Dkt. No. 136.

[63] Tr. Teleconference Regarding Proposed Form Order Appointing AB Value Lead Pl. 15:3–16:7, Apr. 7, 2022, Dkt. No. 141.

[64] Verified Substitute Class Action Compl., Dkt. No. 145.

[65] Def. Douglas Merrill's Mot. Dismiss, Dkt. No. 151; Defs. Microwave Vision S.A., Phillippe Garreau and Arnaud Gandois's Mot. Dismiss Verified Substitute Class Action Compl., Dkt. No. 153; Def. Per Iversen's Mot. Dismiss Verified Substitute Class Action Compl., Dkt. No. 154.

26, 2022.[66] I granted Merrill's motion to stay discovery but denied the other Defendants' similar motion.[67] In my memorandum opinion of January 9, 2023, I denied Micro, Garreau, and Arnaud Gandois's as well as Iversen's motions to dismiss.[68] Merrill seeks dismissal on other grounds; this decision addresses only Merrill's motion.[69]

## II. ANALYSIS

Merrill seeks dismissal under Rule 12(b)(6) for failure to state a claim upon which relief can be granted.[70] I take as true all well-pled allegations and draw all reasonable inferences in the light most favorable to the Plaintiff.[71] However, I may not accept factually unsupported inferences and conclusory statements.[72] Although I must accept reasonable inferences logically drawn from the face of the complaint, inferences that require strained interpretation or lie outside the pale of logic need not

[66] *See* Tr. Oral Arg. Re. Mot. Stay Disc. and Mot. Dismiss Verified Substitute Class Action Compl., Oct. 26, 2022, Dkt. No. 189.

[67] Letter Order, Oct. 27, 2022, Dkt. No. 187; Letter to Counsel, Oct. 31, 2022, Dkt. No. 188.

[68] *In re Orbit/FR, Inc.*, 2023 WL 128530, at *4.

[69] *See* Opening Br. Supp. Def. Douglas Merrill's Mot. Dismiss, Dkt. No. 152.

[70] *Id.* 3.

[71] *Cent. Mortg. Co. v. Morgan Stanley Mortg. Capital Holdings LLC*, 27 A.3d 531, 536–37 (Del. 2011).

[72] *In re Lukens Inc. Shareholders Litig.*, 757 A.2d 720, 727 (Del. Ch. 1999), *aff'd*, 757 A.2d 1278 (Del. 2000).

be accepted.[73]  I may grant the motion to dismiss only if I find that it is not "reasonably conceivable" that the plaintiff may prevail.[74]

Count II of the SC alleges Merrill and the other director defendants breached their fiduciary duties owed to Orbit "by facilitating and approving the Merger at an unfair price, causing damages to the stockholder class."[75]  Given the foundations of this count and the exculpatory provision in Orbit's Certificate of Incorporation,[76] the appropriate legal standard is that of *In re Cornerstone*.[77]  Thus, to survive Merrill's Motion to Dismiss, I must find that the SC has pled a viable, non-exculpated claim against him.  In other words, to survive, the SC must allege a plausible breach of the duty of loyalty.  A breach of the duty of loyalty requires the director to have "harbored self-interest adverse to the stockholders' interests, acted to advance the

---

[73] *In re Gen. Motors (Hughes) S'holder Litig.*, 897 A.2d 162, 168 (Del. 2006) (quoting *Malpiede v. Townson*, 780 A.2d 1075, 1083 (Del. 2001)).

[74] *Cent. Mortg. Co.*, 27 A.3d at 536–37.

[75] Verified Substitute Class Action Compl. ¶ 62, Dkt. No. 145.

[76] "On a motion to dismiss, Delaware courts may take judicial notice of the terms of a corporation's governing certificate of incorporation." *TVI Corp. v. Gallagher*, 2013 WL 5809271, at *14 (Del. Ch. Oct. 28, 2013).  In accordance with 8 *Del. C.* 102(b)(7), Orbit's Certificate of Incorporation contains the following exculpatory provision, "No director shall be personally liable to the Corporation or its stockholders for monetary damages for any breach of fiduciary duty by such director as a director. Notwithstanding the foregoing sentence, a director shall be liable to the extent provided by applicable law, (i) for breach of the director's duty of loyalty to the Corporation or its stockholders, (ii) for acts or omissions not in good faith or which involve intentional misconduct or a knowing violation of law, (iii) pursuant to Section 174 of the Delaware General Corporation Law or (iv) for any transaction from which the director derived an improper personal benefit." Opening Br. Supp. Def. Douglas Merrill's Mot. Dismiss Ex. A ¶ 8, Dkt. No. 152.

[77] *See In re Cornerstone*, 115 A.3d at 1175–76 ("A plaintiff seeking only monetary damages must plead non-exculpated claims against a director who is protected by an exculpatory charter provision to survive a motion to dismiss, regardless of the underlying standard of review for the board's conduct").

13

self-interest of an interested party from whom they could not be presumed to act independently, or acted in bad faith."[78]  To state a non-exculpated claim, the complaint asserts that Merrill "shared in [Micro's] conflicts of interest because he was beholden to Iversen and served previously as an officer of [Orbit]."[79]

The SC asserts that Merrill had been an officer of Orbit, presumably reliant Orbit's controller, Micro, and its conflicted fiduciaries for his employment.[80] This assertion that Merrill was an officer of Orbit, as explained above, was a good-faith mistake on the part of the Plaintiff.[81]  That allegation has been withdrawn, and the Plaintiff does not contend that Merrill was interested in the transaction; nonetheless, the Plaintiff contends that Merrill's relationship with Iversen, and Iversen's own lack of independence from Micro, are sufficient to state a loyalty breach against Merrill. Not so, in my view.

It is true that sufficiently close relationships between a conflicted party and a fiduciary may call into question the loyalty of the fiduciary.[82]  Here, however, the

---

[78] *Id.* at 1180.
[79] Verified Substitute Class Action Compl. ¶ 61, Dkt. No. 145.
[80] *Id.*
[81] Tr. Oral Arg. Re. Mot. Stay Disc. and Mot. Dismiss Verified Substitute Class Action Compl. 38:6–43:5, 63:12–65:18, Oct. 26, 2022, Dkt. No. 189.
[82] *In re Oracle Corp. Derivative Litig.*, 824 A.2d 917, 938–39 (Del. Ch. 2003); *cf. In re MFW Shareholders Litig.*, 67 A.3d 496, 509 (Del. Ch. 2013), *aff'd sub nom. Kahn v. M & F Worldwide Corp.*, 88 A.3d 635 (Del. 2014) ("Our law is clear that mere allegations that directors are friendly with, travel in the same social circles, or have past business relationships with the proponent of a transaction or the person they are investigating, are not enough to rebut the presumption of independence. Rather, the Supreme Court has made clear that a plaintiff seeking to show that a director was not independent must meet a materiality standard, under which the court must

allegation is simply that, years before the transaction, Iversen and Merrill enjoyed bicycle rides together, ending in 2005.[83] This (together with Iversen suggesting Merrill for a directorship) is the sole allegation of a relationship between the two men.[84] Even given the Plaintiff-friendly inferences inherent in a motion to dismiss, I cannot find it reasonably conceivable that Merrill would 1) conclude that Iversen was loyal to Micro and therefore wished to consummate a transaction unfair to Orbit, and 2) that Merrill accordingly breached his duty of loyalty to Orbit by facilitating Iversen's plot to consummate this unfair transaction, based the friendship engendered by a long-abandoned exercise routine. The allegations of the SC cannot support such an inference.

The Plaintiff also points to a "pattern of conduct", largely conclusory, that bolsters the supposition that Merrill was facilitating Iversen's interest in an unfair transaction. These include an allegation that Merrill was aware that the Special Committee's financial advisor, CBIZ, had concerns about management's financial projections, and that Merrill communicated this to Iversen. The SC also avers that Merrill allowed Stout, the Special Committee's successor advisor, to render an

---

conclude that the director in question's material ties to the person whose proposal or actions she is evaluating are sufficiently substantial that she cannot objectively fulfill her fiduciary duties.").

[83] The Plaintiff apparently concedes this timeline. *See* Pl.'s Answering Br. Opp'n Defs.' Mots. Dismiss 43 n.10, Dkt. No. 169.

[84] *See In re KKR Fin. Holdings LLC S'holder Litig.*, 101 A.3d 980, 996 (Del. Ch. 2014) (collecting cases), *aff'd sub nom. Corwin v. KKR Fin. Holdings LLC*, 125 A.3d 304 (Del. 2015) ("It is well-settled Delaware law that a director's independence is not compromised simply by virtue of being nominated to a board by an interested stockholder.").

opinion based on bad data and despite the fact that the Special Committee had agreed on a price before receiving Stout's valuation. These allegations, standing alone, are insufficient to amount to bad faith. They only assume importance given the allegation that Merrill was so close to Iversen that he lacked independence from Iversen's alleged scheme to cause Micro to underpay for Orbit.[85] Because I find the "biking buddies" theory insufficient to support an inference of lack of independence from Iversen on the part of Merrill, the additional allegations, at most, indicate a lack of care, and not loyalty, on Merrill's part in the conduct of the Special Committee. Accordingly, the breach of loyalty claim against Merrill is dismissed.

## III. CONCLUSION

For the foregoing reasons, Merrill's Motion to Dismiss is GRANTED. The parties should provide a form of order.

---

[85] *See In re Cornerstone*, 115 A.3d at 1182–83 ("independent directors are presumed to be motivated to do their duty with fidelity.").

16