# IN THE COURT OF CHANCERY OF THE STATE OF DELAWARE

MARSTRAND PARTNERS,
L.P., derivatively on behalf of
AYALA PHARMACEUTICALS,
INC., a Delaware corporation,

   Plaintiff,

   v.

ISRAEL BIOTECH FUND I,
L.P., ISRAEL BIOTECH FUND
II, L.P., ARKIN BIO
VENTURES L.P., DAVID
SIDRANSKY, M.D., PINI
ORBACH, Phd., YUVAL
CABILLY, Phd., ROBERT
SPIEGEL, M.D., MURRAY
GOLDBERG, RONI APPEL,
KENNETH BERLIN, VERED
BISKER-LEIB, and BRIDGET
MARTEL, M.A., M.D.,

   Defendants,

   and

AYALA PHARMACEUTICALS,
INC., a Delaware corporation,

   Nominal
   Defendant.

)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)

C.A. No. 2024-0421-KSJM

## ORDER GRANTING DEFENDANTS' MOTIONS TO DISMISS[1]

---

[1] The facts are drawn from the Verified Amended Complaint (the "Amended Complaint") and documents it incorporates by reference. C.A. No. 2024-0421-KSJM, Docket ("Dkt.") 39 (Am. Compl.). The director defendants in this action attached Israel Biotech's marketing presentation and Ayala's Form 10-Q filing for the third quarter of 2023 as exhibits to their opening brief. Dkt. 50 ("Director Defs.' Opening Br."), Exs. A, C. Each document is quoted or explicitly referenced in the Amended Complaint and thus incorporated by reference. *Freedman v. Adams*, 2012 WL 1345638, at *5 (Del. Ch. Mar. 30, 2012) ("When a plaintiff expressly refers to and

1.     Ayala Pharmaceuticals, Inc. (the "Company") is a Delaware corporation focused on developing cancer treatments. Israel-based venture capital funds Defendants Israel Biotech Fund I, L.P. and Israel Biotech Fund II, L.P. (together, "Israel Biotech") invested in Ayala in 2017. In April 2018, Israel Biotech led a Series A financing round. In connection with the financing, Israel Biotech appointed non-party Roni Mamluk as CEO, Defendant and Israel Biotech co-founder David Sidransky as executive chairman, and Defendants Robert Spiegel and Murray Goldberg to Ayala's board of directors (the "Board"). In May 2020, Ayala went public on the NASDAQ stock exchange.

2.     By 2021, Ayala was struggling financially. The Company sustained net losses. Creditors doubted its ability to continue as a going concern. Sidransky was a board member of Advaxis, Inc., another struggling biotechnology company, and introduced the two management teams. Ayala began discussing a merger with Advaxis in July 2022. The parties announced a merger (the "Advaxis Merger") pursuant to a merger agreement dated October 18, 2022.[2]

3.     But Ayala was still in a precarious financial position. The month after the Advaxis Merger was announced, NASDAQ threatened delisting Ayala because the Company was not in compliance with stockholders' equity and minimum bid price requirements.

heavily relies upon documents in her complaint, these documents are considered to be incorporated by reference into the complaint; this is true even where the documents are not expressly incorporated into or attached to the complaint.").

[2] Am. Compl. ¶ 88.

4. Ayala began to consider another merger—this time with Biosight, a portfolio company of Israel Biotech and another Israel-based venture capital fund, Defendant Arkin Bio Ventures L.P. ("Arkin"). Ayala and Biosight announced a merger (the "Biosight Merger") pursuant to an agreement dated July 26, 2023. The parties agreed that the board of the merged company would have nine members: four appointed by Ayala; four appointed by Biosight; and Ayala CEO and Board Chair Kenneth Berlin. Berlin would be CEO and Chair of the merged entity.

5. After the Biosight Merger, Ayala's Board comprised Sidransky, Israel Biotech co-founder Yuval Cabilly, Spiegel, Goldberg, Arkin executive Pini Orbach, Roni Appel, Vered Bisker-Leib, Bridget Martel, and Berlin (together, "Director Defendants"). When the Biosight Merger closed on October 19, 2023, Israel Biotech and Arkin collectively owned approximately 36% of Ayala's stock.

6. Germane to this litigation, the Amended Complaint identifies Spiegel and Goldberg as "Venture Advisors" of Israel Biotech.[3] In its marketing materials, Israel Biotech describes Venture Advisors as industry experts that it appoints to its portfolio company boards.[4] Indeed, Spiegel is the former Chief Medical Officer of pharmaceutical company Schering-Plough, and Goldberg is the former Chief Financial Officer of pharmaceutical company Regeneron.[5] Israel Biotech publicly touts Venture Advisors as "chang[ing] the equation" in portfolio companies through

---

[3] Director Defs.' Opening Br., Ex. A at 6.

[4] Am. Compl. ¶ 36.

[5] Director Defs.' Opening Br., Ex. A at 6.

3

hands-on involvement, including "strategic drug development leadership," "recruiting additional key personnel[,]" and "financial help[.]"[6]

7. Further, a 2019 article quotes Sidransky as explaining that Venture Advisors are investors in Israel Biotech and have "skin in the game" with respect to Israel Biotech's investments.[7] And Ayala's public filings suggest that Spiegel and Goldberg, as Venture Advisors, are limited partners in Israel Biotech Fund I, L.P.

8. The Biosight Merger did not stem Ayala's financial difficulties. In November 2023, the Board announced that without additional funding, it would need to consider "bankruptcy and liquidation of the Company."[8] The Board simultaneously explored financing options and engaged in strategic discussions with third parties.

9. On November 16, 2023, the Board met and considered several financing options, including (i) a potential PIPE financing with third-party investors who had indicated interest in providing up to $15 million at a 20% discount to market price, (ii) ongoing strategic transaction discussions with several parties, and (iii) a proposal for a convertible note issuance jointly presented by Israel Biotech and Arkin.

10. Pursuant to Israel Biotech and Arkin's proposed transaction, Israel Biotech, Arkin, and non-party and Ayala stockholder Biotel would lend Ayala up to $4 million through convertible notes to be exercised at a 50% discount to market price. The proposed transaction also contemplated granting warrants to Israel Biotech and

---

[6] Am. Compl. ¶ 36; Dkt. 55 ("Pl.'s Answering Br.") at 36–38.

[7] Am. Compl. ¶ 34.

[8] Director Defs.' Opening Br., Ex. C at 5.

Arkin, giving them the right to purchase up to 15 million additional shares at a discount.

11. The Board approved the transaction proposed by Israel Biotech and Arkin that same day. Further, the Board granted Israel Biotech warrants for 7.5 million additional shares of Company stock at the same discount. The Board also gave Israel Biotech, Arkin, and Biotel the ability to fund up to approximately $5.5 million in additional convertible notes—also to be exercised at the same 50% discount (together with the $4 million convertible note issuance, the "Notes Transaction").

12. After approving the Notes Transaction, Ayala continued to explore strategic options. On December 6, 2023, an advisory firm proposed an asset sale to another biotechnology company, Immunome, Inc. Ayala and Immunome entered into a non-binding term sheet on December 22. Immunome agreed to acquire Ayala's assets, and the parties executed an Asset Purchase Agreement on February 5, 2024 (the "Immunome Transaction"). The Immunome Transaction was announced on February 6, 2024.

13. Two days later, Israel Biotech and Arkin exercised their conversion and warrant rights. Israel Biotech, Arkin, and Biotel also loaned an additional $2 million to Ayala and exercised conversion rights related to that transaction, bringing Israel Biotech and Arkin's total ownership interest to over 80%.

14. The Immunome Transaction closed on March 29, 2024. Upon closing, the Board granted each director a one-time payment: Berlin received $1.6 million;

5

Sidransky received $160,000; Spiegel, Goldberg, Appel, Bisker-Leib, and Martel each received $70,000; and Cabilly and Orbach each received $50,000.

15. Plaintiff Marstrand Partners, L.P. owns Ayala stock. Plaintiff filed this action against Israel Biotech, Arkin, and the Director Defendants (together, "Defendants") on April 22, 2024.[9] After Defendants moved to dismiss the action, Plaintiff amended its complaint on November 15, 2024.[10]

16. The Amended Complaint asserts one count against Defendants for breach of fiduciary duty. The Amended Complaint claims that Israel Biotech and Arkin acted as a control group to cause the Director Defendants to approve the Notes Transaction, and that Israel Biotech, Arkin, and the Director Defendants enriched themselves through the Immunome Transaction. Plaintiff asserts that neither the Notes Transaction nor the Immunome Transaction was entirely fair to Ayala stockholders.

17. Defendants moved to dismiss the Amended Complaint on January 17, 2025.[11] They moved to dismiss pursuant to Court of Chancery Rules 12(b)(6) and 23.1. Israel Biotech and Arkin additionally moved to dismiss under Rule 12(b)(2).

---

[9] Dkt. 1.

[10] Am. Compl.

[11] Dkts. 49, 51.

18. The parties completed briefing on the motions on April 21, 2025. In briefing, Plaintiff dropped its challenge to the Immunome Transaction.[12] The court heard oral argument on April 21, 2026.[13]

19. Rule 23.1 is the procedural embodiment of the "cardinal precept" of Delaware law "that directors, rather than shareholders, manage the business and affairs of the corporation."[14] "In a derivative suit, a stockholder seeks to displace the board's authority over a litigation asset and assert the corporation's claim."[15] Because derivative litigation impinges on the managerial freedom of directors in this way, "a stockholder only can pursue a cause of action belonging to the corporation if (i) the stockholder demanded that the directors pursue the corporate claim and they wrongfully refused to do so or (ii) demand is excused because the directors are incapable of making an impartial decision regarding the litigation."[16]

20. A stockholder can satisfy the demand requirement by pleading that demand is futile. In *Zuckerberg*,[17] the Delaware Supreme Court adopted the "universal test" for demand futility that blends elements of the two precursor tests:

---

[12] *See* Pl.'s Answering Br. at 47–59.

[13] Dkt. 71.

[14] *Aronson v. Lewis*, 473 A.2d 805, 811 (Del. 1984) (citing 8 *Del. C.* § 141(a)), *overruled on other grounds by Brehm v. Eisner*, 746 A.2d 244 (Del. 2000).

[15] *United Food & Com. Workers Union & Participating Food Indus. Empls. Tri-State Pension Fund v. Zuckerberg*, 250 A.3d 862, 876 (Del. Ch. 2020) ["*Zuckerberg I*"], *aff'd*, 262 A.3d 1034 (Del. 2021).

[16] *Id.*

[17] 262 A.3d 1034 (Del. 2021).

*Aronson*[18] and *Rales*.[19]   When conducting a demand futility analysis under *Zuckerberg*, Delaware courts ask, on a director-by-director basis:

> (i) whether the director received a material personal benefit from the alleged misconduct that is the subject of the litigation demand;
>
> (ii) whether the director faces a substantial likelihood of liability on any of the claims that would be the subject of the litigation demand; and
>
> (iii) whether the director lacks independence from someone who received a material personal benefit from the alleged misconduct that would be the subject of the litigation demand or who would face a substantial likelihood of liability on any of the claims that are the subject of the litigation demand.[20]

21.   "If the answer to any of the questions is 'yes' for at least half of the members of the demand board, then demand is excused as futile."[21]   Although the *Zuckerberg* test displaced the prior tests from *Aronson* and *Rales*, cases properly applying *Aronson* and *Rales* remain good law.[22]

22.   To plead demand futility under any *Zuckerberg* theory, a stockholder must allege "particularized factual statements that are essential to the claim."[23]   "[I]t

---

[18] 473 A.2d 805 (Del. 1984).

[19] 634 A.2d 927 (Del. 1993).

[20] *Zuckerberg*, 262 A.3d at 1059.

[21] *Id.*

[22] *Id.*  In 2023, the Court of Chancery amended its rules to reflect the Delaware Supreme Court's adoption of the *Zuckerberg* test and modernize the language and presentation of the Rules to bring them closer in style to the Federal Rules of Civil Procedure. *See In re: Amendments to Rules 7, 10, 17–25, and 171 of the Court of Chancery Rules, Sections, III, IV, and XVI* (Del. Ch. Sep. 25, 2023) (ORDER).

[23] *Brehm*, 746 A.2d at 254.

8

is generally understood that for a fact to be pled 'with particularity,' it must have some indicia of specificity."[24] A plaintiff must do more than provide notice pleading permitted under Rule 8.[25]

23. The Rule 23.1 particularity requirement is not as strict as the Rule 9 particularity requirement, because Rule 23.1 does not call for "newspaper facts."[26] "[E]ven with Section 220 documents in hand, derivative plaintiffs would be hard pressed to plead . . . 'who, what, when, where and how' facts about fiduciary wrongdoing" as derivative plaintiffs typically do not have the means to know those "newspaper" facts like fraud claimants do.[27] Still, the particularity requirement of Rule 9 remains a "useful guidepost."[28] Rule 9 requires, "with respect to the subjects

---

[24] *Elburn ex rel. Invs. Bancorp, Inc. v. Albanese*, 2020 WL 1929169, at *7 (Del. Ch. Apr. 21, 2020) ["*Invs. Bancorp. I*"], *appeal denied sub nom. Albanese v. Elburn ex rel. Invs. Bancorp, Inc.*, 237 A.3d 820 (Del. 2020) (TABLE); *see also Zuckerberg I*, 250 A.3d at 876–77("Rule 23.1 requires that a plaintiff allege specific facts[.]"); *Hughes v. Xiaoming Hu*, 2020 WL 1987029, at *10 (Del. Ch. Apr. 27, 2020) (same); *In re GoPro, Inc.*, 2020 WL 2036602, at *8 (Del. Ch. Apr. 28, 2020)("The plaintiff pleading demand futility must inform the defendants of the precise transactions at issue by describing with particularity the *specific* misconduct in which each defendant is alleged to have participated." (citation modified)).

[25] *Invs. Bancorp. I*, at *7–9.

[26] *Elburn ex rel. Invs. Bancorp, Inc. v. Albanese,* 2020 WL 4194865, at *4–5 (Del. Ch. July 21, 2020) ["*Invs. Bancorp. II*"] (denying application to certify interlocutory appeal), *appeal denied sub nom. Albanese v. Elburn ex rel. Invs. Bancorp, Inc.*, 237 A.3d 820 (Del. 2020) (TABLE).

[27] *Invs. Bancorp II*, 2020 WL 4194865, at *5; *Invs. Bancorp I*, 2020 WL 1929169, at *8 (observing that derivative plaintiffs asserting fiduciary breaches "were not in the board room, and, unlike fraud, were not the direct targets of the wrongful behavior").

[28] *See Invs. Bancorp I*, 2020 WL 1929169, at *9 (describing this court's "articulation of Rule 9(b)'s pleading requirements" in *Kahn Brothers & Co., Inc. Profit Sharing Plan and Tr. v. Fischbach Corp.*, 1989 WL 109406, at *4 (Del. Ch. Sep. 19, 1989) as "a useful guidepost for Rule 23.1").

9

it treats, some greater degree of specificity in pleading. The rule gives to defendants a right to insist that the circumstances constituting the alleged fraud be specified."[29]

24. Rule 23.1 imposes a pleading-stage requirement. "While Rule 23.1 requires that a plaintiff allege specific facts, 'he need not plead evidence.'"[30] And although the requirement of factual particularity is a heightened pleading requirement, it "does not entitle a court to discredit or weigh the persuasiveness of well-pled allegations."[31] "[O]nce a plaintiff pleads particularized allegations, then the plaintiff is entitled to all 'reasonable inferences that logically flow from particularized facts alleged by the plaintiff.'"[32] As the high court explained in *Marchand*, "[t]he standard for conducting this inquiry at the demand futility stage is well balanced,

---

[29] *Kahn*, 1989 WL 109406, at *4.

[30] *Hughes*, 2020 WL 1987029, at *10 (quoting *Aronson*, 473 A.2d at 816); *Ontario Provincial Council of Carpenters' Pension Tr. Fund v. Walton*, 2023 WL 3093500, at *29 (Del. Ch. Apr. 26, 2023) (same); *Zuckerberg I*, 250 A.3d at 877 (same); *In re Ezcorp Inc. Consulting Agreement Deriv. Litig.*, 2016 WL 301245, at *33 (Del. Ch. Jan. 25, 2016) (same).

[31] *Zuckerberg I*, 250 A.3d at 877.

[32] *Hughes*, 2020 WL 1987029, at *10 (quoting *Beam ex rel. Martha Stewart Living Omnimedia, Inc. v. Stewart*, 845 A.2d 1040, 1048 (Del. 2004)) (citation modified); *see also Melbourne Mun. Firefighters' Pension Tr. Fund ex rel. Qualcomm, Inc. v. Jacobs*, 2016 WL 4076369, at *1 n.1 (Del. Ch. Aug. 1, 2016) ("When considering a motion to dismiss under Rule 23.1, this Court affords plaintiffs all reasonable inferences that logically flow from the particularized facts alleged in the complaint." (quoting *Postorivo v. AG Paintball Hldgs., Inc.*, 2008 WL 553205, at *4 (Del. Ch. Feb. 29, 2008))); *Teamsters Union 25 Health Servs. & Ins. Plan v. Baiera*, 119 A.3d 44, 56 (Del. Ch. 2015) ("I accept as true Plaintiff's particularized allegations of fact and draw all reasonable inferences that logically flow from those allegations in Plaintiff's favor." (citing *White v. Panic*, 783 A.2d 543, 549 (Del. 2001))).

10

requiring that the plaintiff plead facts with particularity, but also requiring that this Court draw all reasonable inferences in the plaintiff's favor."[33]

25.     The demand analysis is conducted as to the board in place at the time that the claims at issue were "validly in litigation."[34]   This rule protects representative plaintiffs by preventing defendants from recomposing a board after a derivative claim is filed to strengthen Rule 23.1 arguments.[35]

26.     When Plaintiff filed this action, the Board comprised nine members: Sidransky, Cabilly, Spiegel, Goldberg, Orbach, Appel, Bisker-Leib, Martel, and Berlin, (together, the "Demand Board").[36]   To show demand futility, Plaintiff must allege particularized facts creating a reason to doubt that five of the nine Demand Board members were capable of impartially considering a demand.[37]

---

[33] *Marchand v. Barnhill*, 212 A.3d 805, 818 (Del. 2019).

[34] *Braddock v. Zimmerman*, 906 A.2d 776, 785 (Del. 2006).

[35] *See Harris v. Carter*, 582 A.2d 222, 231 (Del. Ch. 1990) ("When claims have been properly laid before the court and are in litigation, neither Rule 23.1 nor the policy it implements requires that a court decline to permit further litigation of those claims upon the replacement of the interested board with a disinterested one."); *Park Empls.' & Ret. Bd. Empls.' Annuity & Benefit Fund of Chi. v. Smith*, 2016 WL 3223395, at *10 (Del. Ch. May 31, 2016) (describing as "problematic" a situation "where a manipulation of board composition is employed to discourage meritorious derivative litigation"), *aff'd sub nom. Park Empls.' & Ret. Bd. Empls.' Annuity & Benefit Fund of Chi. ex rel. BioScrip, Inc. v. Smith*, 175 A.3d 621 (Del. 2017) (TABLE).

[36] Am. Compl. ¶¶ 94, 137.

[37] *In re INFOUSA, Inc. S'holders Litig.*, 953 A.2d 963, 989–90 (Del. Ch. 2007)("Plaintiffs must show that a majority—or in a case where there are an even number of directors, exactly half—of the board was incapable of considering demand.").

27.    Defendants concede that three of the nine Demand Board members—Sidransky, Cabilly, and Orbach—are incapable of impartially considering a demand.[38]  Plaintiff concedes that four of the remaining six—Appel, Bisker-Leib, Martel, and Berlin—are capable of impartially considering a demand.[39]  To demonstrate demand futility, therefore, Plaintiff must demonstrate that the remaining two directors—Spiegel and Goldberg—are incapable of impartially considering a demand.  Plaintiff advances arguments as to each of Spiegel and Goldberg under each of the three prongs of *Zuckerberg*.

28.    Under *Zuckerberg*'s first prong, a director is disabled for demand futility purposes if they received a material personal benefit from the wrongdoing that was not shared equally with the stockholders.[40]  Whether a benefit is material is a question of fact that takes into consideration the amount, the recipient's wealth, and the circumstances surrounding the benefit.

29.    To allege that Spiegel and Goldberg received a material personal benefit from the Notes Transaction, Plaintiff focuses on a single factual allegation: Spiegel and Goldberg are "Venture Advisors" of Israel Biotech.[41]

30.    Plaintiff contends that as Venture Advisors, Spiegel and Goldberg are limited partners in Israel Biotech, giving them material financial interests in the

---

[38] Director Defs.' Opening Br. at 49–50 (failing to advance arguments as to those directors)

[39] Pl.'s Answering Br. at 26–47 (failing to advance arguments as to those directors).

[40] *Zuckerberg*, 262 A.3d at 1058; *Rales*, 634 A.2d at 936.

[41] *See* Pl.'s Answering Br. at 26–36, 46–47.

performance of Israel Biotech's large investment in Ayala.[42]  But Plaintiff does not plead the size of Spiegel's or Goldberg's investments in Israel Biotech.  Rather, Plaintiff relies solely on at statement by Sidransky from a 2019 news article that Venture Advisors have "skin in the game" as investors in Israel Biotech.[43]  It is unclear from the quote whether that "skin" comprises interests in Israel Biotech or the portfolio companies.  Only the former supports Plaintiff's argument.  And even then, a vague statement quoted by the press in 2019 regarding Venture Advisors generally is not sufficiently particularized to demonstrate that Spiegel and Goldberg had material interests in the Notes Transaction.

31.    Plaintiff also cites to Venture Advisors' key management roles at Israel Biotech's portfolio companies.  Israel Biotech markets Venture Advisors as "changing the equation" in its portfolio companies through hands-on involvement, including "strategic drug development leadership," "recruiting additional key personnel[,]" and "financial help[.]"[44]  But those allegations do not support a reasonable inference that Spiegel and Goldberg had hands-on involvement in Israel Biotech itself as opposed to its portfolio companies—here, Ayala.  And that fact does not impugn their ability to impartially consider a demand.

---

[42] *Id.* at 37.

[43] *Id.* at 38; Am. Compl. ¶ 34.

[44] Am. Compl. ¶ 36; Pl.'s Answering Br. at 36–38.

13

32. The Amended Complaint's allegations regarding Spiegel's and Goldberg's ties to Israel Biotech fail to plead that either director received a material personal benefit under *Zuckerberg*'s first prong.

33. Plaintiff also alleges that Spiegel and Goldberg received material benefits from approving the Notes Transaction because they each have a material personal interest in serving as directors. According to Plaintiff, each would avoid taking action against Israel Biotech or Arkin to preserve their Board positions.[45] Further, Spiegel and Goldberg each received a payment of $70,000 upon the closing of the Immunome Transaction. Plaintiff claims that the payments constitute material benefits to Spiegel and Goldberg.[46]

34. Generally, "Delaware law recognizes that directors will be paid a fair and reasonable amount. For that reason, when director fees are not excessive, mere allegations of payment of director fees [or their continuation] are insufficient to create a reasonable doubt as to the director's independence."[47]

35. The Amended Complaint lacks any allegations—pled with particularity or otherwise—suggesting that Spiegel's or Goldberg's director compensation is excessive. Nor does the Complaint allege that the $70,000 payments were material to them. These allegations also fail to satisfy the first prong of *Zuckerberg*.

---

[45] Am. Compl. ¶ 139.

[46] *Id.* ¶¶ 143–44.

[47] *In re Trade Desk, Inc. Derivative Litig.*, 2025 WL 503015, at *16 (Del. Ch. Feb. 14, 2025), *aff'd*, 350 A.3d 1223 (Del. 2025) (quoting *Simons v. Brookfield Asset Mgmt. Inc.*, 2022 WL 223464, at *15 (Del. Ch. Jan. 21, 2022)).

14

36.     Under *Zuckerberg*'s second prong, Plaintiff must plead particularized factual allegations demonstrating that Spiegel or Goldberg faces a substantial likelihood of liability for the Notes Transaction.[48]  Plaintiff's arguments under *Zuckerberg*'s second prong focus on its argument that the Notes Transaction was not entirely fair to Ayala's stockholders.[49]  But the Complaint makes no allegations particular to Spiegel and Goldberg that relate to the Notes Transaction.[50]  The Complaint does not even state whether Spiegel or Goldberg voted on the transaction, much less voted to approve it.[51]  Given the dearth of allegations concerning them specifically, it is difficult to understand what liability either director faces.  The Complaint fails under the second prong of *Zuckerberg*.

37.     *Zuckerberg*'s third prong requires Plaintiff to plead "facts from which the director's ability to act impartially on a matter important to the interested party can be doubted because that director may feel either subject to the interested party's dominion or beholden to that interested party."[52]  Doubts about a director's independence may arise "because of financial ties, familial affinity, a particularly close or intimate personal or business affinity or because of evidence that in the past

---

[48] *Los Angeles City Employees' Ret. Sys. v. Sanford*, 352 A.3d 276, 325–28 (Del. Ch. 2026) (discussing the relationship between stating a claim under Rule 12(b)(6) and demonstrating that demand is futile based on a substantial likelihood of liability under *Zuckerberg*).

[49] Pl.'s Answering Br. at 39–46.

[50] *See* generally Am. Compl.

[51] *See* Pl.'s Answering Br. at 41–44.

[52] *In re Carvana Co. S'holders Litig.*, 2022 WL 2352457, at *8 (Del. Ch. June 30, 2022) (quoting *Sandys v. Pincus*, 152 A.3d 124, 128 (Del. 2016)).

15

the relationship caused the director to act non-independently vis à vis an interested [party]."[53]

38. To satisfy *Zuckerberg*'s third prong, Plaintiff relies on its allegations around Spiegel's and Goldberg's positions as Venture Advisors to Israel Biotech.[54] Plaintiff relies on the same allegations on which Plaintiff bases its prong-one argument. Plaintiff alleges that Spiegel and Goldberg are Venture Advisors to Israel Biotech. This means that Israel Biotech places them on boards of portfolio companies, where they are "hands-on."[55] These board positions give Spiegel and Goldberg opportunities to earn "skin in the game."[56] Again, it is unclear whether this "skin in the game" refers to interests in Israel Biotech or the portfolio companies. Israel Biotech appointed Spiegel and Goldberg to Ayala and its various iterations. Plaintiff identifies no other boards on which Spiegel or Goldberg serve. Effectively, Plaintiff's theory boils down to the idea that Spiegel and Goldberg lack independence from Israel Biotech because Israel Biotech appointed them to the Board and might appoint them to other boards. This is not enough to demonstrate demand futility under Delaware law.[57]

---

[53] *Beam*, 845 A.2d 1040, 1051.

[54] *See* Pl.'s Answering Br. at 46–47.

[55] Am. Compl. ¶ 37.

[56] *Id.* ¶ 34.

[57] *In re KKR Fin. Hldgs. LLC S'holder Litig.*, 101 A.3d 980, 996 & n.64 (Del. Ch. 2014), *aff'd sub nom. Corwin v. KKR Fin. Hldgs. LLC*, 125 A.3d 304 (Del. 2015) ("It is well-settled Delaware law that a director's independence is not compromised simply by virtue of being nominated to a board by an interested stockholder." (collecting cases)); *see also Flannery v. Genomic Health, Inc.*, 2021 WL 3615540, at \*16 (Del. Ch. Aug.

16

39.    Because the Complaint fails to satisfy any of the prongs of *Zuckerberg*'s three-part test, Plaintiff cannot demonstrate that demand is futile as to the Demand Board.

40.    Defendants' motions to dismiss the Amended Complaint under Rule 23.1 are GRANTED.    The court need not reach Defendants' other dismissal arguments.

/s/ *Kathaleen St. J. McCormick*
Chancellor Kathaleen St. J. McCormick
Dated: May 27, 2026

---

16, 2021) (granting dismissal, noting that "the fact the [investor] appointed [the director] to these various boards does not, alone, cloud her independence as a [company] fiduciary").